Parker, J.
The Court in this case are of opinion that the direction given at the trial — which considers the owner of a ship not liable for goods clandestinely taken on board by the master, the owner being present, and having the management of the voyage himself, or, when accidentally absent, having an agent with whom he intrusts that business, leaving nothing to the master but the care of sailing and directing the ship herself, and especially when the ship is not a freighting ship, and when the shipper might have known the limited authority of the master — was right. And it seems to be reasonable, as well as lawful, that the shipper of goods, who deals altogether with the master, expecting to avail himself of his privilege, and knowing that the owner intended to load the vessel himself, should not have recourse to the owner in case of embezzlement; *101 for in such case the shipper trusts to the master alone, and the owner may be utterly ignorant that the property is on board, for which he is to be made liable.
We cannot think that, when a merchant sends his ship abroad with a supercargo, which is often the case, and with no expectation or design of taking freight, a foreign shipper of goods may make a private bargain with the master, and at the same time avail himself of the general liability of the * owner to [ * 103 ] secure him from the misconduct of the master. Such a principle would be mischievous to ship-owners, and be productive of frauds, by holding out temptations to treat with the master for less than the ordinary freight, to the prejudice of the ship-owner, who would receive no consideration for the risk he incurs.
The Court also think, with the judge who tried the cause, that, :f the ship-owner, under such circumstances, assents to and adopts the act of the master, he may be accountable in the case of embezzlement, notwithstanding the contract was made with the master alone; because he appoints the master, and a degree of credit is given to him, by his appearance in a situation of so much trust; and the ship-owner may then be considered as giving a permission to the master to take the freight on his own account, without denying his own responsibility for the safe delivery of the goods.
We think in this case, if the defendant knew, before the ship sailed from Monte Video, that the master had received the goods on board upon freight, it was his duty to see to their safe custody and delivery at the port of discharge ; and had the goods all been on board when the defendant returned from Buenos Ayres to take charge of his ship, and had it been made known to him that the master had received them on board in his absence, on freight, he would have been accountable for them in case of embezzlement.
But we are not satisfied that on this point the jury were suffi ciently instructed. They were informed generally that if the defendant knew that the goods had been received by the master before the vessel sailed, he must be considered as having adopted the act of the master. Under this general direction, the jury might have considered it immaterial to distinguish between the bales which had been sold by the master before the defendant’s return, and those which might be supposed to remain on board the vessel.
We think that a distinction exists in law; and that the defendant might be answerable for those bales which were on board the vessel, and not for those which had been previously embezzled.
* We also think the charge not sufficiently clear, in [ * 104 ] stating the liability of the defendant to rest on his knowledge of the goods being received by the master on board *102 He might know this, and suppose them the master’s own adventure ; but his liability would rest on his knowledge that the goods were received on board upon freight, and a presumption of an assent on his part to the contract made with the master.(a)

New trial granted. 
(1)

a) Burgon vs. Sharpe, 2 Camp. 529.— Ward vs. Green, 6 Cowen, 173.

 See cases Temp. Hardw. 85, 194, Boucher vs. Lawson.—Abbot on Shipping, 85,