JONES et al. *vs.* SIMS & SCOTT.

1. The shipper of cotton, cannot recover for its loss, of all the owners of a boat carrying goods, &c. for hire, where he makes a special contract with some of the joint owners, (without the knowledge of the others,) by which the freight, is to go in extinguishment of a demand of a shipper, against the owners, with whom the contract was made,

Error to the Circuit court of Tuscaloosa county.

Case against a common carrier, for negligence—tried before *Chapman*, J.

The defendants in error brought an action on the case, against the plaintiffs, in the Circuit court of Tuscaloosa, to recover of them the value of one hundred bags of cotton. The plaintiffs in error are charged in the usual form as common carriers, with having received on board the steam-boat Warrior, (of which they were joint proprietors, &c.) one hundred bags of cotton, at the port of Tuscaloosa, to be carried thence to the city of Mobile : all of which, by reason of the carelessness, negligence, &c. of the plaintiffs, was not delivered, but wholly lost, &c. The case was tried on the *general issue.* At the trial, the presiding judge sealed a bill of exceptions, from which it appears that the defendants, previous to the

Jones et al. *vs.* Sims & Scott.

shipment of their cotton, were owners of an interest of one half in the Warrior—that Hammond, one of the plaintiffs, during the time of the defendants' part-ownership, was master, and Donaldson, (who had died previous to the commencement of the action,) was clerk on the boat.

It appeared further, that on the ninth of September, eighteen hundred and twenty-eight, the defendants sold to Messrs. Hammond and Donaldson, their interest in the Warrior, and both sellers and purchasers entered into an obligation each to the others, in the penal sum of seven thousand dollars, conditioned as follows:

"The condition of the above obligation is such, that the said parties of the second part, have purchased of the said parties of the first part, one half of the steam-boat called the Warrior, (and which is now lying on the Black Warrior river,) with all the tackling, rigging, and furniture, &c., for the sum of three thousand five hundred dollars, to be be paid in freight, as follows: That the party of the first part shall have the right of shipping at each down passage of said boat, two hundred bales, or less, of cotton, at the lowest cash price, by giving the said parties, or the agent of said boat, notice, on the day of arrival of said boat, the number of bales they intend shipping; and that all over two hundred bales, are to be paid for by the parties of the first part, in cash, to the parties of the second.

"And it is further agreed and understood by both parties, that the parties of the first part shall further have the right of shipping as much up-freight as they may furnish on board said boat, on the same conditions as expressed above: each shipment up or down is to be charged to the

party of the first part, as payment in part of said note of three thousand five hundred dollars. It is also agreed and understood by each party, that if the said parties of the second part refuse to receive freight as above express-ed, from the party of the first part, upon application, or for so much as they are entitled to; by giving the notice above mentioned, then the party of the first part shall have the right of charging interest on so much as would amount to the freight they were entitled, until the parties of the second part comply with their engagement." This is so much of the contract of the parties, as a proper un-derstanding of the case requires to be recited.

Bearing even date with the contract, a promissory note was made by Messrs. Hammond and Donaldson, in these words :

"$3500 00.

"From the first day of December next, until the first day of June following, we promise to pay Sims & Scott, or bearer, thirty-five hundred dollars, to be discharged in freight during the ensuing winter and spring, at the lowest cash prices, value received—This 9th day of Sep-tember, 1828.

"John W. Donaldson,

"Larkin Hammond."

And it is to this note that the contract refers.

The shipment of the cotton was proved, as alleged in the declaration, and also that it was lost—all of which occurred on the first or second trip from Tuscaloosa to Mobile, after the sale of the defendants' interest in the *Warrior*.

Whereupon the counsel for the plaintiffs in error,

Jones et al. *vs.* Sims & Scott.

moved the court to instruct the jury, that if they believed from the evidence, that the cotton was shipped under the agreement between Messrs. Hammond and Donaldson and the defendants in error, that the freight should go towards the payment of the debt incurred by the former, in the purchase of the defendants' interest in the boat, —that then Jones & Horner (who were sued as joint owners and co-partners with Hammond, in running the Warrior for freight,) were not responsible for the loss of the cotton; which instruction was refused by the court, and the plaintiffs in error excepted, &c.; and a verdict being found against them, and judgment thereupon rendered, they prosecuted their writ of error to this court.

*Peck,* for plaintiffs in error.
*Porter,* contra.

*Peck,* for plaintiffs in error.—The plaintiffs below were consignors, and gave in evidence, a bill of lading, but no other evidence of title.   We insisted below that the action should have been brought by the consignee— (1 Peters' Rep. 386, 495; 1 Chitty on Pl. 3, 6, 7; 5 Petersdorff, 167; Jones on Bailments, 107, H. & I.; Griffeth vs. Inglesden, 6 Serg. & Rawle, 429; Sargent vs. Morris, 5 Eng. Com. Law Rep. 283.)

The court charged, that joint ownership in the vessel made plaintiffs partners *per se,* without any other evidence of partnership.   Plaintiffs here insist that this charge was erroneous, and that they were not liable as co-partners in this action—(14 J. R. 318; Gow. 5, 270; 17 J. R. 535; 3 Kent's Com. 151, 154, 155; 15 Mass.

370; 1 J. R. 112; 6 Pickering, 335; 3 Kent, 16, 17; 4 J. C. R. 522; 12 Mass. R. 54; 20 J. R. 611; 2 Vesey & Beam, 242.) The case of Dodington vs. Hallet, does not militate with the doctrine as applicable to this case, because it recognises a distinction between an original part owner, and his representative, and a purchaser for valuable consideration—(1 Vesey, sr. 496.) *Spencer*, C. J. in the case of Mumford vs. Nichol, (20 J. R. 633,) says, that ship owners may, by agreement, become joint tenants or co-partners in ships. There is no evidence sufficient to shew that in this case Jones & Horner were part owners at the time of the loss.

There was a special agreement between defendants in error with Hammond and Donaldson, by which defendants sold to H. and D. one half of the boat, which they owned before that time—by which agreement they were to be paid in freight. We insist that inasmuch as this was a contract made by Sims & Scott with H. and D. who were master and clerk on the boat, without the knowledge of Jones & Horner, and not within the scope of the authority of the master, it must be considered the contract of the master only, not binding on the owners, and that H. and D. only are liable, the cotton being shipped under the agreement. To bind the owners, the master must contract within the scope of his authority— (15 Mass. 372, 373; 1 J. R. 318; Gow. 5, 270; 17 J. R. 535; 1 J. R. 112, 114; Abbot on Sh. 98; 1 Taunt. 391; 19 J. R. 235; 11 Mass. 99; 2 Camp. 529; 4 Pickering, 456; 2 Wash. Cr. Co. R. 297, 19; 3 ibid. 495, 501, 503.)

There was a verdict for John Jones, one of the parties, charged on a joint contract, and judgment should

Jones et al. *vs.* Sims & Scott.

have been for defendants below—(Abbot on Sh. 82, 83; 2 J. R. 212; 11 J. R. 113; Jones vs. Williams, 2 Wash. C. C. R. 482.)

Judgment should have been final for defendants below on demurrer;—because there was a misjoinder of liabilities, in charging defendants below as joint-owners, and as co-partners:—and because some of the counts were in assumpsit, and others in case, a mis-joinder which was not amendable—(1 Chitty's Pl. 548; Gould on Pl. Ch. 4, 98, 219.)

*Porter,* for defendants in error.—The only questions which can arise, are upon the charges asked and refused by the court below. These are—

1. If the jury believed from the evidence, the particular cotton was shipped under the agreement, plaintiffs in error were not liable for the loss.

2. If the jury should believe from the evidence, that the cotton was shipped under the agreement, and that the freight went toward payment of Hammond and Donaldson's debt, plaintiffs in error were not responsible.

Both these requests to charge, embrace the same principle.

First—I need not cite authorities to sustain the proposition, that there must be evidence set out in the bill of exceptions, to sustain an objection to the charge of, or refusal of a court, to charge. If this be not done, the charge asked will be considered abstract.

A charge asked must be pertinent to the issue—the record must show its pertinency, and in the case of evidence, the record must disclose that the proof was made.

9 P 31

This being the principle, I then contend, that no part of the bill of exceptions in this case discloses, that proof was made, that the cotton charged to have been lost, was shipped under the agreement between Sims & Scott, and Hammond & Donaldson.

The agreement itself is no testimony to this point, because for aught that appears to the court, the amount which was stipulated to be shipped, had been exhausted. The court cannot say, therefore, what part of the agreement had or had not been performed.    If the party, then, had desired to raise this question, he should have made his proof, that the freight of this cotton, went by the agreement of the parties, to discharge the debt, or that the cotton was expressly shipped under the agreement set out—and this evidence should have been set out in the record, so that the court may have known whether relevant to the issue, or sufficient to authorise the charge prayed.

Again—The presumption, if any could arise, that the freight was to go toward the debt of Hammond and Donaldson is negatived, by the testimony of McLosky, who, when asked a question, evidently intended to create this supposition; and who denied having received the instructions that he need not pay freight, as arrangements were made at home, to pay it.

Again—If, the court could legally draw an inference favorable to the supposition, that this particular cotton was shipped under the contract of sale, such inference would be met and strongly rebutted by the tenor of the bill of lading, which stipulates *that the freight was to be paid in Mobile, by McLosky & Hagan, the consignees.*

Jones et al. *vs.* Sims & Scott.

☞ In the case of Sims & Scott *and* Jones, decided in 6 Porter, one of the exceptions relied on, was designed to raise the question, whether the plaintiffs in error could be charged, inasmuch as the vendees, H. and D., had agreed to pay for the share they purchased in freight. This question was raised upon the refusal to make a charge identical with that refused here.

The court say, " The question is not presented by the evidence recited in the bill of exceptions." " The bill of lading is *prima facie* evidence of what it contains." "It requires the freight to be paid by him," (the consignee.) *"The question is abstract from the proof"*—(6 Porter, 164.)

There is not, then, upon this point, a tittle more in the last bill of exceptions, than in the first—In fact, there is more in the bill of exceptions in the case in 6 Porter, from which an inference may be drawn that this cotton was shipped under the agreement, because it was in proof there that Hammond and Donaldson were insolvent, and Sims & Scott wealthy—none of which proof exists in the present bill of exceptions.

So far, then, as the bill of exceptions shews, the court was requested to make a charge on a particular point of law, in reference to a legal liability, when no proof had been submitted to the jury, that such was the state of the case.

It is true, the plaintiffs proved that the cotton was theirs—but this amounts to no proof, of how the freight was to be paid.

It is true, plaintiffs sold to Hammond and Donaldson, and under an agreement, were to receive pay, in freight —but this embraces no proof, of how much had or had not

been paid—or whether this particular cotton was shipped under the agreement.

Second—I can conceive of no ground upon which to charge upon Sims & Scott, a fraud upon Jones and the other owners—

1. Because Sims & Scott, as has been decided in this court, had a right to sell their interest, without consulting the other joint owners—(2 Stew. & Por. 170; 6 Porter, 138.)

If this sale was in good faith, (and there is nothing here negativing it,) then the moment Sims & Scott's interest passed out of them, they, as a matter of course, held the same relation to the boat, as the rest of the community. This relation, was one authorising the shipment of produce upon her, upon the usual terms, the payment of freight—and this relation, which the boat bore to Sims & Scott, as well as to the balance of the world, was one consequent *upon the employment of the boat*—(6 Porter, 164.)

There was, then, nothing in the employment of the boat, by Sims & Scott, which would place them in a different attitude, towards the owners remaining in the concern, than that in which strangers stood. The question of how they were to be paid for the interest they had sold, was one between them, and Hammond and Donaldson. If the latter undertook to pay for the share they purchased in freight, to an amount beyond what they were entitled to, they of course became liable to the other joint owners. They could legally enter into no stipulation with Sims & Scott, by which Jones and the other joint owners could be deprived of their share in

Jones et al. *vs.* Sims & Scott.

every bale of cotton shipped on the boat. To the amount of this share, Jones & Horner had a lien upon the cotton, and *no part of the agreement between Sims & Scott, and Hammond and Donaldson, could have deprived Jones, as one of the joint owners, from seizing the cotton and retaining it until the freight was paid*—(Whitaker's Law of Lien, 95, 96.)

The position assumed by the counsel for the plaintiffs in error, rests upon the false supposition, *that the liability is consequent upon the stipulations which existed between Sims & Scott and Hammond and Donaldson.*

Not so—*It rests upon the fact of the employment of the boat, coupled with the fact of her negligent management: and upon the principle, that they who share the profit of such employment, must bear the loss of negligent management.*

If there was no fraud in the sale, then, the employment by Sims & Scott of the agents of the other joint owners, was no fraud upon them, because they were officers of the boat. They had been held forth to the world as competent to manage the boat; and if competent in respect to the world, *a fortiori*, so with respect to Sims & Scott, who would be presumed to know their capacity: and if the sale did any thing, it gave Hammond and Donaldson an additional inducement to manage the boat with prudence—and of consequence, thus far, protected, rather than injured, the rights of the other joint owners.

The position of Sims & Scott, gave them no advantage over Jones and the other owners, than was held by strangers. The employment of the boat by them, was of no more advantage to them, than it would have been to strangers; they paid the same freight—were liable to

the same dangers, and were entitled to the same remedy for losses. The sale by them to Hammond and Donaldson, whether a good one or not, left Jones and the other owners *in statu quo:* it neither infringed upon their rights as joint owners, or took from them, or either of them, one iota of the interest or profit which was accruing to them from the employment of the boat: and it will be recollected, also, that Hammond and Donaldson, *as officers*, had a claim upon these owners for their wages— which if they chose to receive in freight, cannot be visited upon the defendants in error.

This is neither the case of an agent transcending his authority, or of a shipment made in violation of particular stipulations prescribed by the master—which is the case in the authorities cited by the opposing counsel.

COLLIER, C. J.—The only question arising in this case is, whether the shipper of cotton can recover for its loss, of all the owners of a boat carrying goods, &c. for hire, where he makes a special contract with some of the joint owners, (without the knowledge of the others,) by which the freight is to go in extinguishment of a demand of the shipper against the owners, with whom the contract was made.

According to the English common law, the business of carrying goods for hire was considered a public employment, and the carrier, upon compensation being made, was obliged to carry the goods of all persons, offered him in the regular course of his business: and was only relieved from liability for a loss, by showing it to have resulted either from *the act of God, or the public enemies—*

(Coggs vs. Bernard, 2 Ld. Raym. R. 909, 918; Rushforth vs. Hadfield, 6 East's R. 525; 2 Bla. Com. 67.) And if he refused to carry goods, having the convenience to do so, he would have been liable to an action, unless he had reasonable ground for the refusal—(Jackson vs. Rogers, 2 Shower's R. 129; 1 Shower's R. 104, 105; 1 Saund. R. 312, n. 2; Batson vs. Donovan, 4 B. & Ald. R. 32, *per* Holroyd, J.; Edwards vs. Sherrat, 1 East, 604.) It is not necessary, that there should be a special agreement for hire, to entitle the carrier to recover a compensation, or to render him liable in the event of a loss, for in the absence of an express contract, he may have an action of *assumpsit*, founded on a *quantum meruit* for the recovery of freight—(2 Shower's R. 129; Moore vs. Wilson, 1 T. R. 660; 5 B. & Ald. R. *per* Abbott, C. J. p. 353.)

Thus we have seen, that in order to constitute a common carrier at common law, and to impose the liabilities incident to that character, it is necessary that hire should have been paid, or that the right to demand it, exists—(2 Kent's Com. 464; 1 Salk's R. 282.)

If a man undertake to carry goods, without any compensation for his trouble, he will only be responsible for a loss, happening by the negligence of himself or his agents. In the case at bar, the plaintiffs in error are not sought to be charged for a loss happening on a gratuitous bailment—so that it is immaterial what may have been the proof as to the manner of the loss, if the plaintiffs (Jones & Horner,) were excluded by the contract of the defendants with Hammond and Donaldson, from receiving compensation, they cannot be made liable as carriers.

The case of Bignold et al. vs. Waterhouse et al. (1 M. & Selw. R. 255,) is not altogether unlike the present in its facts, and in principle, it is directly in point. The plaintiffs were bankers, residing at Norwich, and the defendants proprietors of the mail coach from Norwich to London. Early in the year eighteen hundred and ten, a person, who was one of the proprietors of another coach, called the old Norwich coach, intending to relinquish a part of his interest in that concern, and having promised the refusal to the plaintiff, T. Bignold, the defendant, Coldwell, proposed to T. Bignold, that if he would give up his claim to that promise, his own family and private parcels, should go free by the mail coach; to which proposal T. Bignold, after some time, acceded. From that time, parcels were sent two or three times a week, free of expense, until at length, in eighteen hundred and twelve, a parcel was sent by the plaintiffs, to a house in London, containing bills and notes to a large amount, which was lost. There was no evidence that any of the proprietors of the coach, except Coldwell, had any knowledge of the agreement made between himself and Bignold; and an action being brought against *all of them*, to recover for the loss of the package, the plaintiffs were non-suited. A rule *nisi* having been obtained for setting it aside, and argued, *Lord Ellenborough* observed : " It appears to me, in this case, that there was not any contract with the defendants, constituted in such a manner as to bind more than one of them. There was indeed a contract, and a fraudulent one, between T. Bignold and Coldwell, which was unknown to the other defendants, to carry the family and private parcels

Jones et al. *vs.* Sims & Scott.

of Bignold, free of carriage, for a consideration moving to Coldwell alone." Again—" It (the parcel) was delivered to the defendants for the purpose of carriage, but not for a reward to all the partners; but for a reward which was to be intercepted by one only. It is a general rule, indeed, that where several are concerned together in partnership, notice to one is equivalent to notice to all; but that rule presumes that the transaction is *bona fide.* Here, however, the case is different; the agreement is made with one of the defendants for his individual benefit alone, and the others are not parties concerned, not being made privy to the agreement. It was incumbent, therefore, on the plaintiffs, to shew that notice was given to the other partners. I do not rely on the argument, that this was a bailment for the conveyance of the parcel without reward, and therefore the bailee responsible only for personal negligence; but the ground I take is this, that there was no contract at all between the plaintiffs and the defendants." And with *Lord Ellenborough,* the other judges of the King's Bench concurred, and the rule *nisi* was discharged. We have considered thus at length the case in Maule & Selwyn, because it seems to us so decisive of the one at bar. In that case, the contract was with but one of the owners of the coach—here, it was with two of the proprietors only of the boat: there, the reward was intercepted by one only —here, Messrs. Hammond and Donaldson, if the shipment was made on the footing of their agreement with the defendants, alone received the freight. Here, as in that case, the record furnishes no intimation that Messrs. Jones & Horner had a knowledge of the agreement between

9 P                32

Jones et al. *vs.* Sims & Scott.

the defendants in error and Hammond and Donaldson, so that there is not the slightest ground to infer that they gave their assent to the arrangement, by agreeing to look to Hammond and Donaldson as their *debtors primarily*, for their proportion of the freight with which the defendants might credit Hammond and Donaldson.

So, in King & Mead vs. Lenox, (19 Johns. R. 235,) an action was brought against the owner of a ship, to re-cover for goods lost on a voyage from Calcutta to New York. It appearing that the plaintiffs contracted with the master of the ship *himself*, with the knowledge that he received their goods on his own account, and not in his character of agent for the owners; the court held that the contract was not made by any implied authori-ty of the owners, arising out of the usual course of em-ployment, and that the defendant was not chargable with the loss. To the same effect, are the cases of Sat-terlee vs. Groat, (1 Wend. R. 272,) and Allen vs. Seawell, (2 Wend. R. 327.) And in Butler vs. Baring, (2 Carring-ton & Payne's Rep. 613,) Garrow, B. remarks, that "If persons be foolish enough to send parcels by a wagoner, for a hire to be paid to him, which is never intended to find its way into the pocket of the owner of the wagon, there the owner is not liable, in case the parcel is lost." (To the same point are the cases of Walter vs. Brewer, 11 Mass. R. 99; Reynolds vs. Tappan, 15 Mass. R. 370; Thompson vs. Snow et al. 4 Greenl. R. 264, and Riley vs. Horne, 5 Bing. R. 217, 220, 221, in which Best, C. J. delivered a very learned and elaborate opinion.

We do not pretend to say that the owners of a boat shall always receive or be entitled to a reward for the

Jones et al. *vs.* Sims & Scott.

carriage of goods, in order to render them liable for a loss. If there was an agreement between the master and the owners, or between the owners themselves, by which the master in the one case, or some of the owners in the other, were to receive to their use exclusively, the freight earned in whole or in part by the boat, such an agreement would not exempt all the owners from liability; unless it was known to the shipper at the time his shipment was made. But we do say, that to charge the owners with a loss, where the contract was made through a master, the contract should be made relative to the usual employment of the boat—(19 Johns. R. 236; 2 Wend. R. 327.) This conclusion clearly results from the law of *principal and agent;* and that where there was an agreement between *the shipper, and some of the owners,* by which *the latter were alone to receive the freight,* the owners, not benefitted by the shipment, are not liable for a loss. The authorities already cited are full to this point—(See further, Taggard and others vs. Loring, 16 Mass. R. 336; East India Co. vs. Pullen, 2 Strange's R. 690.)

It will follow, from what we have said, that if the defendants in error shipped their cotton on the *Warrior*, under their agreement with Hammond and Donaldson, that Jones & Horner are not liable for the loss, and that the Circuit court should have instructed the jury as asked.

For the refusal thus to instruct them, the judgment is reversed and the case remanded.