McIlvaine, J.
The first question to be determined in this case is one of practice.
Will this court, upon petition in error, review the testimony and reverse the judgment of an inferior court, which judgment itself is a judgment of reversal rendered upon proceedings in error to an inferior tribunal, the ground of reversal being that the court rendering the original judgment erred in refusing to set aside its judgment, on a claim that it was not sustained by sufficient evidence; the cause after reversal having been remanded to the court of original jurisdiction for further trial and proceedings, where it is still pending ?
This question has not heretofore been finally passed upon in any case wherein the court found the weight of testimony in favor of the verdict or finding of fact, under either the statute of 1845 or 1858, making the insufficiency of evidence a ground for reversal on error. And it has been suggested that in this case the determination of it is somewhat embarrassed on account of the peculiar organization of the Superior Court of Cincinnati — both the original judgment and the judgment of reversal having been rendered in that court — and the cause is still pending therein for further trial on the merits. But on examination of the statute (and amendments thereto), establishing the Superior Court of Cincinnati, we are satisfied that, for the purposes of the present question, the special term of that court must be regarded as a court of original jurisdiction, and the general term as a court of error, so that this case stands as though an inferior court of original jurisdiction had refused to set aside its findings and judgment, and grant a *134 new trial, upon the grounds named, and afterward a court superior to it had, upon proceedings in error, reversed the judgment of the inferior tribunal for error in not granting a new trial, upon the ground that its judgment was not sustained by sufficient evidence, and had remanded the cause for further proceedings. See Swan & Critchfield, 388, et seq.
We must, therefore, regard the case in the general term as finally disposed of, and its judgment of reversal as a final judgment within the meaning of title 16 of the code of civil procedure.
Germane to the question then before us, are two or three rules of practice which have been fully settled:
1. The verdict of a jury should not be set aside by the court to which it is returned on account of any mere difference of opinion between the judge and the jury as to the weight of the testimony, but only when the verdict is unsupported by or is against the decided weight of the evidence. 5 Ohio, 245; 12 Ohio, 151; 2 Ohio St. 44; 4 Ohio St. 566.
2. Motions for new trials, upon the ground that the verdiet is against the weight of evidence, are addressed to the discretion of the court, and if granted, the judgment will not be disturbed on error unless the case is so strong as to show an abuse of the discretion. 5 Ohio, 245; 13 Ohio St. 115. And if the motion be overruled, a reviewing court should not reverse, unless the verdict (or finding of fact, if the jury be waived) is so clearly unsupported by the weight of evidence as to indicate some misapprehension, or mistake, or bias on the part of the jury, or a willful disregard of duty. McGatrick v. Wason, 4 Ohio St. 566; French v. Millard, 2 Ohio St. 53; 4 Ohio St. 60.
3. In cases wherein the motion for a new trial was overruled by the court of original jurisdiction, and judgment on the merits was rendered, and such judgment was afterward reversed upon proceedings in error in a higher court, for the reason that it was not sustained by sufficient evidence, it has been held by this court, on petition iu error to reverse that judgment of reversal, that, as a general rule, it *135 will not be considered a case subject to reversal, unless clear and palpable error is manifest. See Spafford v. Bradley, 20 Ohio, 74, and John Hammond v. Mary Hammond, decided at this term, but not yet reported.
The theory upon which these cases appear to have been decided, is, that inasmuch as the case is pending, in the court of original jurisdiction, for trial, before a jury whose peculiar province is to determine issues of fact, it should not be withdrawn unless error has clearly intervened. The authority of the court, however, to proceed to judgment of reversal in a proper case is not denied. We have no fault to find with those cases, but believe that there is and should be a just and proper hesitancy in declaring the judgment below to be erroneous, and that the reversal was imprudently and illegally entered under such circumstances.
And it must be observed that in both the cases referred to, the membei’s of the court concurring in the opinions delivered were divided upon the question, as to whether the original judgment was or was not sustained by the weight of the testimony; and, therefore, the judgments of reversal were not disturbed.
But we are unanimously of the opinion, that in a case wherein the weight of testimony is clearly in favor of the original judgment, it is error to reverse it, and in such ease the judgment of reversal should be reversed. 4 Ohio St. 481; 17 Ohio St. 188.
2. Without quoting from the testimony in the record, suffice it to say, that on examination of all the evidence in the case, we are clearly of the opinion that the twenty bales of cotton, for which the original action wa3 brought against the defendants, as owners of the steamboat Lady Franklin, were not delivered on board the boat, nor to any person authorized to receive freight for said boat, nor on the wharf where she was receiving freight at the time. Hence, the only matters remaining to be considered are questions of law arising upon a state of facts clearly disclosed upon the record.
*136 The execution of the bill of lading by the chief clerk of the boat, which purported to cover the twenty bales in dispute being admitted, and it being conceded that they were not delivered to the consignee as per bill of lading, a prima facie case was made for the plaintiffs below. Then as to the matters of defense: 1. Was it competent for the defendants’ to show, by parol testimony, that the cotton in controversy had not been received by the boat, and thus contradict the terms of the bill of lading? Certainly it was, and for two reasons: 1. In so far as the bill of lading was a mere receipt for freight, it was clearly subject to explanation by parol testimony. 4 Ohio, 334; 28 N.Y. 598; 5 Selden, 531; Abb. Abm. 196. And, 2. Officers of a vessel engaged in the business of a common carrier have no presumed authority to issue bills of lading for freight not on board the vessel, or not delivered to some one authorized to receive freight. And if the bill of lading be issued without authority, the owners are not bouud thereby. 18 Howard, S. C. 191; 7 Blatch. C. C. 246; 18-Eng.L. & E. 551; 3 Allen, 107; 2 Exch. 274; 8 Exch. 333; 11 Mass. 99; 10 Com. B. 687.
Nor is there anything in the facts of this case, which, under the doctrine of estoppel in pais, precluded the defendants below from showing that the goods in. question had not been shipped on their boat, as stated in the bill of lading, or from denying their liability for not delivering them to the consignee.
The facts were as follows:
Harris, Hunt & Co., agents of the plaintiff's at Memphis, had in store seventy-three bales of cotton of the plaintiffs. Harris, Hunt & Co., intending to ship the cotton for the plaintiff's to Cincinnati by the steamer Lady Franklin, which is owned by the defendants, filled dray-tickets with the printed headings Lady Franklin, to be signed by the receiving'clerk of the Lady Franklin on receiving the cotton. The drayman of Harris, Hunt & Co. took fifty-three bales of the cotton to the Lady Franklin, and got the receiving clerk’s name to a dray-ticket for so many bales of cotton. *137 But tlie drayman intrusted with the twenty bales, by mistake, took them to the steamer Sunny Side, and delivered them to Irwin, the receiving clerk of the Sunny Side, on his signing the dray-ticket for twenty bales of cotton. These dray-tickets were returned to Harris, Hunt & Co., by their drayman, and taken down by Mr. Babb, a member of the firm of Harris, Hunt & Co., to the steamboat Lady Franklin and presented to Frank Stein, the first clerk of the steamer, for a bill of lading, and without observing that one of them was signed by Irwin, the receiving clerk of the Sunny Side, instead of Frank Holmes, the receiving clerk of the Lady Franklin, Stein issued the bill of lading for seventy-three bales of cotton, the boat having actually received but fifty-three. The fifty-three bales were brought to Cincinnati and delivered according to the requisition of the bill of lading. The twenty bales have not been delivered nor heard of since. But as the steamboat Sunny Side, starting from Memphis about the same time with the Lady Franklin, was burnt on the Mississippi, with all the property on board, the presumption is that the cotton was destroyed with the Sunny Side. The twenty bales of cotton, then, were not delivered, nor received on board the Lady Franklin. The bill of lading was, in fact, prepared by Mr. Babb, as was his duty under the custom at that port, and was presented, ready for signature, to Stein, chief clerk, for signing merely, and was signed by him without examination or discovery of the mistake.
The acknowledgment of the seventy-three bales in the bill of lading was by mistake, and the mistake was mutual. Under mistake, Babb represented to the first clerk, by presenting to him the dray-tickets and calling for a'bill of lading for the seventy-three bales, that so many bales had been delivered. The first clerk, under a like mistake, issued the bill of lading for the whole number. There was no fraud on the part of either, though there may have been some neglect on both sides.
It is clear, for several reasons, that the conduct of Stein? in omitting to examine the dray-tickets, whereby he might *138 have discovered that the twenty bales had been delivered to the Sunny Side and not to the Lady Eranklin, and his carelessness in signing a bill of lading for more freight than his boat had in fact received, can not work an estoppel in pais as against the owners of the boat: 1. It can not be affirmed that the plaintiffs below were injured thereby. 2. The loss of the cotton on board the Sunny Side was the result of the fault of the drayman, the plaintiff's’ agent.. 3. It was the duty of Mr. Babb to prepare and present a correct bill of lading, and it was his wrong to present a bill for more freight than he had delivered to the Lady Eranklin. 4. The conduct of Stein did not amount to a representation that Irwin was a receiving clerk for the Lady Eranklin. 5. This whole controversy has grown out of mutual, but innocent mistakes on both sides.
The original judgment, therefore, was not contrary to the law or the testimony, and should not have been reversed.
Judgment at general term reversed, and judgment at special term affirmed, and cause remanded for execution, etc.