Gould, J.
It is fully conceded that, in this court, there is no question that the contract for carrying the cattle at reduced rates, in consideration that the owner assume certain risks as to them, is a valid contract. And this court (Wells v. N. Y. C. R. R. Co., and Perkins v. Same), has this year decided that a contract by a passenger, to take the risk of injury to his person in consideration of riding free, is a valid contract.
In the case before us, the ticket upon which the deceased was riding is a free ticket, a pass without paying. And in consideration thereof, the passenger assumed all risks, &c. The same person at the same time made another contract, that, in consideration of the carrying of his cattle at reduced rates, he assumed certain risks in regard to them; and in that contract he provided that the person riding free to take care of the cattle should assume certain risks. Calling these two contracts (together) one contract, makes no difference with the reason of the ruling applicable to each of them separately.
-Do contracts, of which each separately is good, become invalid because combined, or contained in one instrument? Is a passenger’s contract to assume risks on one consideration (riding free) good; but bad when you add the other consideration, that his cattle are carried at a reduced price? Further, if he may make a contract by which he shall ride free, may he not, by contract, say that he is riding free, although he has paid for the transportation of his goods ? How has the court any right to alter his contract, and say that he is not riding free ?
Again, if he may by contract assume certain risks, in con- . sideration of riding free, why may he not make a contract to assume the same risks, in consideration of being carried at half price, as he does for his stock ? When we once hold that assuming these risks is within his power as matter of contract, the court has no power to interfere with his contract on the score of quantum of consideration, or on any ground but illegality of consideration.
The judgment of the Supreme Court should be reversed, and a new trial ordered.
*445 Selden, J.
The following positions appear to be settled in regard to the duties and responsibilities of railroad corporations engaged in the transportation of persons and property in this State:
1. In regard to the transportation of goods, they are subject to the absolute responsibility which rests upon, common carriers, and are, therefore, insurers of the safe carriage and delivery of the goods, except against accidents towards the production of which no human agency has contributed.
2. In the transportation of living animals they are relieved from responsibility for such injuries as occur in consequence of the vitality of the freight, so far as such injury could not, by the exercise of diligence and care be prevented: in other respects, their responsibility in regard to stock is the ■ same which rests upon them in regard to goods. (Clark v. Rochester and Syracuse R. R. Co., 14 N. Y., 570.)
3. In regard to the transportation of passengers, they are not in any respect insurers, but are answerable for any injuries to their passengers, against which the utmost skill and foresight could guard. (Bowen v. N. Y. Central R. R. Co., 18 N. Y., 408.)
4. This responsibility embraces not only any want of care and foresight on the part of the immediate agents of the corporation, but also any defects arising from want of care or skill in the manufacturers of the machinery or materials used in the structure or operation of the road, whether discoverable by any exercise of care and skill on the part of the immediate agents of the road or not. (Hegeman v. The Western R. R. Co., 3 Kern., 9.)
5. The companies cannot limit their responsibility by any notice, though expressly brought to the knowledge of those whose persons or whose property they carry; but they may secure such limitation by express contract with those persons. (Dorr v. N. J. Steam Navigation Co., 1 Kern., 485.)
6. Such limitation may be agreed upon in relation to the safety of property under any circumstances, whether carried gratuitously or for reward; and in relation to the safety of *446 persons, when they are carried gratuitously. (Wells v. N. Y. C. R. R., 24 N. Y., 181; Perkins v. Same, id., 196.)
7. In such contracts the companies may lawfully be relieved
from all responsibility for the negligence or misconduct of their subordinate servants and agents; the question being as yet unsettled, what servants or agents, if any, are to be regarded as so directly representing the company, that a contract relieving the company from responsibility for their negligence or misconduct may not lawfully be made. (Cases cited above.) • •
8. Whenever the companies are authorized to relieve themselves by contract from liability for the negligence of their agents, no distinction is made in regard to the degrees of negligence against which they may stipulate. (Same cases; also Wells v. Steam Navigation Co., 4 Seld., 875.)
The questions which arise in this case are:
1. Did tjie contract on which Mr. Bissell was traveling when the accident occurred, in its tórms throw upon him the risk of personal injury, from such circumstances as caused his ■ death?
2. If the contract embraced such a case, was it valid and binding?
In regard to the first question, I think he must be regarded 1 as traveling by virtue as well of the ticket as of the contract. They were both delivered at one time, and together constitute the contract. Each may be referred to in arriving at the terms of the whole contract, which was, in effect, but one, and not two.
That which is called the ticket was a part of the contract which Bissell might, or might not, have entered into. The effect of it was to .give him the privilege of riding on the stock train, or on the passenger train, at pleasure; and when he made that a part of the contract, he was bound by all its terms, as well as the Company. The conditions as to personal risk, under the head of “ notice,” on that ticket, are not confined to such risk, when riding on the passenger train, but extend to all personal risks when riding on any train, under *447 the contract, treating it as one. The language is, “ the owner of stock receiving this ticket assumes all risk of accidentand that risk, as stated, covers all injury to stock or person, without reference to the train by which the person should be carried.
I do not, however, regard this as material, because the terms of the other portion of the contract appear to me equally broad. The expression, “ at their own risk of personal injury from whatever cause,” in connection with the other words of the contract, cannot be held to exclude any injury' which the party might receive, however occasioned, while riding or acting under the contract, and against which the company had a right to protect itself by contract.
The remaining question is, was the contract valid ?
And, first, was .Bissell “ riding free, to take charge of the stock,” within the meaning of those terms as used in the contract? It is not claimed that he paid anything for his passage, aside from the $70 per car-load which he paid for carrying the cattle. He was, therefore, doing exactly what the parties intended when they used the terms “ riding free,” and was bound by the contract .to ride at his own risk as to personal injury. So far as the parties to the contract were concerned, he was “riding free;” whether, in view of the law, he was carried by the company gratuitously, so as to authorize the company to relieve themselves from the consequences of negligence in his transportation, if their power to do so was limited to passengers thus carried, is another question. If it were necessary to decide that question, I am not prepared now to say what my conclusion would be. • But I do not regard it as necessary. The principle being established that railroads may, by contract, relieve themselves from the negligence of their servants in the carrying of passengers when carried gratuitously, I can discover no rule of law or public policy to prevent their doing it on any other terms which may be agreed upon between them and their passengers, and which shall furnish a consideration to the passengers for the risk which they assume.
*448 All the arguments which have been urged against the propriety and safety of allowing carriers to make such contracts, apply with as much force to cases where passengers are canned gratuitously as where they are carried for reward. So far as the public are concerned, the question of reward is one of indifference; and so far as the parties are concerned, if they are allowed to-make the contract at all, they are the judges of the amount of consideration which will compensate them for assuming the risk, whether the whole fare, or half, or an eighth or any other proportion, or other consideration. I apprehend it is entirely safe to leave them to fix the terms. (1 Kern., 192.) I refer, of course, to actual contracts, and not to attempted limitations of the carriers’ responsibility, by means of indorsements upon tickets, not assented to by the passengers who receive them.
If there was no limitation to the power of railroad companies in making such contracts, there would be great danger of public inconvenience in the establishment of such rule; but even then, after finding the law to be settled that such companies could protect themselves against liability by express contract, I should doubt the propriety of attempting to prescribe, by judicial decision, how great the consideration should be to render such contracts valid.
The legislature, however, has not left the matter at large, but has probably done all which is required for the protection of the public, or of individuals, in this respect, by guarding them against the ■ necessity of negotiating with any railroad company on this subject. On the offer, by a passenger, of the fare prescribed by law, the company is bound to transport him, and to assume all the risks which fall within the appropriately stringent rules above adverted to; and in case of refusal, such company is made liable for all damages resulting from such refusal. (Laws of 1850, ch. 40, § 36.) But if any one wishes to travel with greater economy than by paying the fare which the legislature has prescribed (or, in the absence of legislation,' which usage has established, 3 Paige, 75), as the reasonable compensation for the transportation and risk, and *449 prefers to pa/ less, or to pay nothing, and to assume the risk himself, I do not think there is either danger or impropriety in allowing it toobe done; and there is no principle upon which my mind can rest to justify the position that courts shall recognize such a contract as valid, when the company, in consideration of the passenger’s assuming the risk, agrees to carry such passenger without fare, and declare it void, when, for the same consideration, the company agreed to carry him for half fare. The two cents a mile which the defendant is allowed by law to charge for carrying way passengers, and three cents a mile for other passengers, is what the law adjudges (in the absence of usage fixing a less sum), to be a reasonable compensation for the expense of carrying the passenger, including the risk imposed by law, of his qualified insurance against injury. To .hold that the defendant and the passenger may lawfully agree that the former Shall be relieved' from the risk, and the latter assume it, and then to add that no such agreement shall be valid unless the defendant gives to the passenger for assuming the risk the full compensation which the law allows it to receive for risk and transportation united, would not seem to be reasonable. I should regard it as far more rational, to deny to the parties all power to contract on the subject.
Like -all contracts, to render such a one valid it is indispensable that it have some consideration which it would not have if the passenger paid the full fare fixed by law. That is all which the company is allowed to receive for the service and the risk united, and it can no more demand the full com-. pensation of both, for the service alone, than it could demand the fare for a hundred miles for carrying a passenger fifty miles. If the service is reduced, the amount of reward must be reduced in proportion; and if the company is relieved from the risk, it must make compensation for that relief by the reduction of fare or otherwise. The amount of such compensation, like the consideration for all contracts, must be left to the agreement of the parties. The law has wisely, for the protection of passengers, guarded them against any necessity *450 for negotiation, on this subject. If they choose to do it voluntarily, I can discover no ground for saying that they may not make such terms as they please. I entertain no doubt, therefore, that the contract in this case was valid.
It appears from the case that the defendant’s superintendent testified on the trial that “ the price of fare for cattle freight was uniform, all one rate.” From this it has been argued by the plaintiff’s counsel that Bissell was neither “riding free,” nor at a reduced rate of fare, at the time of the accident. I have already given my interpretation of the contract in this respect, which does not accord with this position; but whether such interpretation is correct or not, the position of the counsel cannot be made available now, it not having been presented on the trial. The trial appears to have proceeded on the ground that the intestate was traveling on a free ticket, and that the only question in doubt was, whether the negligence of the defendant’s agents was such as to render the defendant liable notwithstanding the intestate was “riding free” under an engagement on his part so to ride “ at his own risk of personal injury from whatever cause.” If he in fact paid as a passenger the full fare allowed by law, or the usual fare, if - less than that allowed by law, without reduction on account of his engagement to assume such risk, in my opinion the engagement would be without consideration, and not binding upon him or his representative. That question will doubtless be open to the plaintiff on a new trial, but as it was not presented, so far as the case shows, at the former trial, it cannot be considered here.
It is insisted that, if the contract was valid, it only relieved the defendants from responsibility for the negligence of the persons having charge of the train on which Bissell was riding. This is a mere question of interpretation of the contract. The question is, what did the parties intend by the words which they have used ? The principle being established that parties may lawfully enter into contracts of this nature, there is no limit to the extent and variety of modification which may be given to such contracts. The passenger may assume all risks *451 arising from the condition of the track, or from the condition of the locomotives, or of the cars, or all risks from the negligence of the agents, of all of them, or of any class of them. There is no danger which the party may encounter, resulting from the journey, which he may not assume the responsibility of, and he may assume all or any portion of it.
This contract in itself exemplifies all this. In regard to the stock the owner assumes certain defined risks, confined to a very narrow circle, and all the risks beyond those are still charged upon the company. On the other hand, with regard to his “ own risk of personal injury,” he assumes it by words as comprehensive as the language affords, “ from whatever cause;” and he “ expressly agrees that the company shall not be liable under any circumstances, whether of negligence by their agents or otherwise, for any injury to the person.” I can imagine no injury which the passenger could receive as the consequence of his journey, against which the company has power to protect itself by contract, which is not embraced by these terms, and which he has not assumed. The terms of the contract in this case supply what was wanting in the case of Wells v. The Steam Navigation Company (supra), to exempt the carrier from responsibility for the negligence of agents.
The 36th section of the general railroad law, which has already been adverted to, has been relied upon as establishing rhe defendant’s liability in this case. That section is in the iollowing words: “ Every corporation shall start and run their cars for the transportation of passengers and property at regular times, to be fixed by public notice; and shall- furnish sufficient accommodations for the transportation of all such passengers and property, as shall within a" reasonable time previous thereto be offered for transportation at the place of starting and the junctions of other railroads, and at usual stopping .places established for receiving and discharging way passengers and freights for that train ; and shall take, transport and discharge such passengers and property at,, from and to such places, on the due payment of the- freight or fare. *452 legally authorized therefor; and shall be liable to the party aggrieved in an action for damages for any neglect or refusal in the premises.”
The argument based upon this statute, if it proves anything, proves too much. If that section is applicable to this case to sustain the position for which it is cited, notwithstanding the terms of the contract under which the intestate was carried, I do not see why it would not render railroad companies absolutely “ liable to the party aggrieved in an action for damages for any neglect ” in the transportation of persons or property. It would seem to make them insurers of the safety of passengers, as they were at common law of the safety of freight, against all dangers not arising from the act of God or the public enemies, and to superadd to that stringent rule of liability a prohibition against the modification of it by contract. Such an application of the statute would show all the decisions of this court, sustaining the right of railroad companies to reduce the extent of their liability by express contract, to have been erroneous. But if the statute should receive an interpretation more favorable for the carriers, as not increasing their liability, it can have no force in support of the argument in aid of which it is invoked, unless it is- held to prohibit contracts by carriers reducing their liability; which would render it equally in conflict with the decisions before mentioned. The true object of this section of the statute has, as it appears to me., been correctly declared in this court, viz., “ to bring these railroad lines within the general principle of common carriers, with such variations as the nature of the business required.” (2 Kern., 250.) I do not think it was any part of that object to add to their general responsibility as carriers, or deprive them of the power which they possessed prior to its passage, of making contracts in regard to such responsibility. .
There are several exceptions in the case which properly present the principal points which I have considered, and which are well taken., ' «
The judgment should be reversed and a new trial granted.
*453 Smith, J.
In the cases of Wells v. The New York Central Railroad Company, and of Perkins v. Same Defendant, this court decided—six judges concurring—that the carriers of passengers, as well as other common carriers, might restrict their common-law liability by express contract. In each of those cases, the passenger was riding on a free ticket. In this case, in like manner, the plaintiff’s intestate was riding ostensibly also upon a similar free ticket. I do not see why this case is not precisely within the rule established in those cases, and why the doctrine of stare decisis does not require us to reverse the judgment in this case. The fact that the plaintiff's intestate was riding in defendant’s cars, to accompany his stock, carried as freight, and for which the customary charges were paid and received, cannot, as I see, affect the question. The ticket which Bissell received, and which he used as a voucher to show his right to ride in a passenger car, was, in fact, a free ticket. He received it as a free ticket. Besides the indorsement on the ticket, he signed an express agreement, in which he engaged to take his risk in respect to all accidents or injuries to his person from the negligence of the defendant’s agents, or whatever cause. The argument that the rule in the Wells and Perkins cases cannot apply in this case, because there was, in fact, a consideration received by the defendant for the carriage of the plaintiff’s intestate, is not, I think, sound. It disregards the force of the ticket which he received, and on which he was, in fact, riding at the time of the accident, and which he received and used as a free ticket, and for which he professedly paid no fare separately from the price paid for the transportation of his stock. But it is undoubtedly true that he received such free ticket, and it was given him by the defendants in consideration of the business and profits received from him from the freight of the stock which he accompanied. So, in all cases when free tickets are given, I suppose there is some consideration of interest, or profit, or advantage, received or expected, which constitutes the inducement to the giving of the ticket. In this sense, there would probably seldom, if ever, be given by a railroad company a strictly free ticket. *454 Nor does the liability of the carrier depend upon the question whether he received any actual pecuniary or other consideration for the transportation of a person over their road. Receiving a passenger into their cars for transportation, binds the carriers to carry him safely—as much so with a passenger who has paid no fare as with one’ who has paid full fare and purchased the customary ticket; and subjects them to an action for damages for any injury resulting from the negligence of themselves or their servants and agents. The exemption from such liability rests solely upon the ground of express contract. The fact that Wells and Perkins, in the cases referred to, applied for and received respectively a free pass, was doubtless the reason why they made the agreement to take their own risks. The Company, for the same reason, made that a condition of giving them a free pass. It could not have made or imposed any such terms or conditions upon a person paying his fare; for, upon the payment of the customary fare,' they were bound to carry such passenger at their own risk in respect to all injuries resulting from the negligence of the Company, its agents or servants.
It cannot be material, as I conceive, whether a person who receives a free pass- and agrees to take his own risk of accidents, and to become, in effect, his own insurer against the casualties of the trip, receive such free ticket to enable him to accompany his property, or for any other reason or consideration. If he takes the free ticket and assents to the agreement indorsed thereon, or otherwise expressly agrees to take his own risk, he must, in either case, abide by his contract, and is bound thereby.
In the decision of this case at the general term of the Supreme Court, I expressed the opinion that the action could be sustained'on the ground that the negligence of the brakeman was. the negligence of the corporation, for the reason that he was improperly employed, and was unfit for his station. This view, I am satisfied, was erroneous. The case was not tried upon this theory. I think the judgment should be reversed, and a new trial granted, with costs to abide the event.
*455 Davies and Allen, Js., were also for reversal.