SAMUEL C. WILSON, Respondent, *v.* THE METROPOLITAN ELEVATED RAILWAY COMPANY, Appellant.

The purchaser of a promissory note, purporting to have been issued by a corporation, who makes the purchase under circumstances which devolve upon him the duty of inquiry as to its validity, assumes no greater risk, by his failure to make inquiry, than the burden of proving that the facts he could have discovered, had he made inquiry, would have protected him.

*It seems* the general rule is that one who receives from an officer of a corporation its notes or securities in payment of or as security for a personal debt of the officer, does so at his peril. *Prima facie* the act is unlawful, and unless actually authorized, the purchaser will be deemed to have taken them with knowledge of the rights of the corporation.

In an action upon a promissory note executed in the name of defendant by K., its president, and countersigned by him, made payable to its order, and indorsed by K., as president and individually, and transferred by him to plaintiff, who discounted the same, paying the proceeds to K., defendant claimed that the note was illegally issued and applied by K. to his own use, to the knowledge of plaintiff. It appeared that the note was issued and delivered to K. in pursuance of a resolution of defendant's board of directors, which recited an indebtedness on its part to him for salary to the amount of the note. *Held,* that conceding plaintiff had knowledge of the fact that the note was being used by K. for his benefit, and so that it was put upon inquiry; as the result of the inquiry would have been simply the discovery of the resolution, which showed K. was using the note as he was expressly authorized to do, this constituted an appearance of authority upon which a purchaser, for value, had a right to act; that plaintiff stood in no different position than that he would have occupied had he made inquiry; and that the fact the corporation was not in fact indebted as stated in the resolution was no defense.

(Argued February 28, 1890; decided April 15, 1890.)

Appeal from judgment of the General Term of the Court of Common Pleas in and for the city and county of New York, entered upon an order made February 15, 1887, which affirmed a judgment in favor of plaintiff entered upon a verdict directed by the court, and affirmed an order denying a motion for a new trial.

This action was brought upon a promissory note for $2,500 made by the defendant, payable to its own order.

At the close of the testimony, each party moved for a direction of a verdict in its favor. Upon such request, the court directed the jury to render a verdict in favor of the plaintiff, subject to the opinion of the court. Thereafter, and during the same term, the court, after hearing counsel for the respective parties, sustained the verdict and judgment was entered thereon for $3,117.21. Defendant made a motion for a new trial, which was denied.

The defendant is a duly organized domestic corporation. On the 20th day of May, 1879, it leased its railway franchises, etc., to the Manhattan Railway Company, a duly organized domestic corporation, which thereupon took possession of the defendant's railway, and has ever since, with unimportant exceptions, operated the same. Sylvester H. Kneeland was a stockholder, a director and the president of the defendant from the 8th of November, 1882, until August, 1884. What services he rendered, if any, as such president, does not appear. The office of president, up to about the time of making the note in question, had never been a salaried one. No agreement was made by the defendant to pay Kneeland a salary or to give him any compensation for his services before the 5th of June, 1884. Shortly after three o'clock on the day last named, committees representing the defendant and the Manhattan Railway Company, entered into a memorandum agreement for the merger and consolidation of the two companies. This agreement provided that "the Manhattan company consolidated to assume all liabilities" * * * "and to receive all assets" (of the defendant). Subsequently the two corporations were consolidated substantially on the basis stated in the memorandum.

About 3:30 P. M. on the same day, at a meeting of the board of directors of the defendant, regularly appointed, the committee of that company presented the memorandum agreement so entered into, and it was unanimously adopted.

At the same meeting the following resolution was unamously adopted: " Resolved, that S. H. Kneeland, the president of the company, shall be paid a salary of $25,000 per annum from the time of his election as such." Mr. Kneeland presided at this meeting and put the resolution to vote. On the 18th of June, 1884, another duly appointed meeting of the directors of defendant was held, at which the following resolution was unanimously adopted: " That the president be and he is authorized to use the credit of the company by issuing and negotiating its notes, or otherwise, for paying the salary of said president; said notes to be signed by the president and countersigned by the treasurer in the usual way and form, and not to exceed the limit of the amount heretofore authorized." Mr. Kneeland presided at this meeting and put the question to vote.

In accordance with the provisions of the last resolution, notes were issued, signed by S. H. Kneeland, as president of the defendant, and countersigned by the treasurer; they were made payable to the order of the defendant and indorsed by S. H. Kneeland as president and individually, and aggregating, as it is claimed, $48,950. These notes matured at various dates from August 8 to October 31, 1884.

This suit is brought upon one of such notes which was transferred directly to the plaintiff by Kneeland under the following circumstances: On May 26, 1884, plaintiff cashed for Mr. Kneeland a check for $7,650, drawn by the Mercantile Trust Company on itself, by giving him the full value thereof. Plaintiff held the check uncollected until June 28, 1884, on which day Kneeland sent to him the note in suit and two other notes issued, as above stated, of like amount and tenor, and varying slightly in dates. The plaintiff then discounted the three notes, giving Kneeland, as the proceeds of the discount, the check of the Mercantile Trust Company instead of cash, and charging him with the $7,650 advanced to him on May

twenty-fifth, together with interest to the date of the discount, and crediting him with the three notes discounted, less the interest thereon, to their maturity. This left a balance against Kneeland of $283, which the latter paid to the plaintiff in cash. Two of the notes thus discounted were paid. The one in suit was not, and hence this action.

Further facts appear in the opinion.

*Edward S. Rapallo* for appellant. The plaintiff was not a *bona fide* holder of the notes sued upon, without notice. (*Garrard* v. *P. & C. R. R. Co.*, 29 Penn. St. 154; *Shaw* v. *Spencer*, 100 Mass. 388; *Pendleton* v. *Fay*, 2 Paige, 202; *Hill* v. *Simpson*, 7 Ves. 162; *Petrie* v. *Clark*, 11 S. & R. 377; *Williamson* v. *B. Bank*, 7 Ala. 913; Parsons on Part. [3d ed.] 221.)

*Francis C. Barlow* for respondent. The note in suit was made by the defendant — that is, Kneeland, president, and Niebuhr, treasurer, were authorized to make it, and Kneeland, president, was authorized to negotiate it. (*Booth* v. *Bank*, 50 N. Y. 401; 16 id. 125.) The plaintiff paid value for the note, before maturity. (*P. Ins. Co.* v. *Church*, 81 N. Y. 222.) When plaintiff was asked to discount a corporate note signed by Kneeland, president, he was bound to satisfy himself that "Kneeland, president," had authority to bind the corporation by the note, since his authority was not to be inferred merely from his office. (*Risley* v. *R. R. Co.*, 1 Hun, 202; 62 N. Y. 240, 245; *Adriance* v. *Roome*, 52 Barb. 399; *Williams* v. *Mitchell*, 17 Mass. 101; *Cowing* v. *Altman*, 71 N. Y. 435, 442, 443; *Coates* v. *O'Donnell*, 94 id. 176; *Hascall* v. *L. Assn.*, 5 Hun, 151, 155; *Bank* v. *Warren*, 7 Hill, 91, 95; *Lovett* v. *S. S. Mill*, 6 Paige, 54.) One who discounts the note of a corporation which is expressly authorized by a resolution of its directors to be issued to pay a salary, or to pay for goods bought, or money borrowed, is not bound to inquire whether the salary is legally payable, or whether the goods were bought or the money borrowed.

(*N. R. Bank* v. *Aymar*, 3 Hill, 262; *E. Bank* v. *Monteath*, 26 N. Y. 505; *R. B. Bank* v. *Turguand*, 6 El. & Bl. 327, 332; *City of Lexington* v. *Butler*, 14 Wall. 296; *Bissell* v. *R. R. Co.*, 22 N. Y. 290; *Barnes* v. *O. Bank*, 19 id. 164; *Safford* v. *Wyckoff*, 4 Hill, 445; *Bank* v. *Bank*, 10 Wall. 644, 645; 1 Daniell on Neg. Inst. § 385; 1 Parsons on Notes and Bills [2d ed.], 164, 165.) The contention that the defendant had no power to pay its president a salary, and to raise the money to do so, by its notes, is untenable. (Laws of 1850, chap. 140, §§ 5, 6; 2 R. S. [6th ed.] §§ 5, 7; Laws of 1872, chap. 885, §§ 2, 3.) The power to give the president a salary, is expressly conferred upon the directors, by statute, though not by its charter. (2 R. S. [6th ed.] 390, 391, § 1; *McCullough* v. *Moss*, 5 Den. 575; *Beveridge* v. *R. R. Co.*, 112 N. Y. 22, 23; *Risley* v. *R. R. Co.*, 1 Hun, 202, 204; Angell & Ames on Corp. § 257; Parsons on Notes & Bills [2d ed.], 114; *Partridge* v. *Badger*, 25 Barb. 170; *Barry* v. *M. E. Co.*, 1 Sandf. Ch. 289, 290; *Willmarth* v. *Crawford*, 10 Wend. 343; *Safford* v. *Wyckoff*, 4 Hill, 445, 446; 1 Abb. Dig. 116, 117, 207–209; *Ex parte P. R. Co.*, L. R. [2 Ch. App.] 617, 624.) As directors may appoint a president, and fix his salary, and as he must be a director, it is idle to say that the fact that he is a director prevents his being paid a salary. (Laws of 1850, chap. 140, § 6; 2 R. S. [6th ed.] 390, 391, § 1; *Beveridge* v. *R. R. Co.*, 112 N. Y. 22, 23.) The defendant's directors being authorized to give Kneeland a salary, the mere fact that he was present at the meeting which authorized the issue of notes to pay it, or voted for the resolution, is immaterial. (*M. E. R. Co.* v. *M. E. R. Co.*, 14 Abb. [N. C.] 103, 252, 293, 295; *Paine* v. *Irwin*, 16 Hun, 390, 395; *Colburn* v. *Morton*, 5 Abb. [N. S.] 323; *Hoyle* v. *R. R. Co.*, 54 N. Y. 328; *Stewart* v. *R. R. Co.*, 38 N. J. L. 523.) Although the stockholders are entitled to the undivided allegiance of their agents (the directors), and are entitled to complain if they act as directors upon a question in which they have a personal interest, yet the stockholders may assent to a departure from the principle. (14 Abb. [N. C.] 294,

295 ; *A. M. Co.* v. *Senter*, 26 Mich. 73 ; *Beveridge* v. *R. R. Co.*, 112 N. Y. 1, 22, 23 ; *Carman* v. *Beach*, 63 id. 101.) The action of the president and treasurer, in signing the notes, was an act involving no judgment or discretion. (*People* v. *Bank*, 75 N. Y. 547, 556.) Defendant's contention that a president cannot be paid a salary unless it is ordered by a resolution of the directors, is wholly unfounded. (*Phillips* v. *Campbell*, 43 N. Y. 271, 292 ; *R. R. Co.* v. *Swisher*, 15 N. Y. S. R. 760 ; *Holland* v. *Bank*, 52 Me. 564 ; *Bank* v. *Elliott*, 55 Ia. 104.)

PARKER, J. This court has decided at this term in the case of *Metropolitan Railway Company* v. *Kneeland*,* that certain notes, including the one in controversy, are valid legal obligations against the defendant, in favor of a purchaser for value before maturity, and without notice of the circumstances attending their issue.

It is insisted, hower, that the plaintiff is not in a position to claim that he is a *bona fide* holder without notice, because the note was made by the corporation payable to itself, indorsed by Kneeland as president and individually ; it was sent to him by Kneeland through a messenger, and, therefore, it is said, he knew when he received it that the company's note was being applied by its president to his personal benefit and advantage.

Undoubtedly the general rule is that one who receives from an officer of a corporation the notes or securities of such corporation, in payment of, or as security for, a personal debt of such officer, does so at his own peril. *Prima facie* the act is unlawful, and, unless actually authorized, the purchaser will be deemed to have taken them with notice of the rights of the corporation. (*Garrard* v. *P. & C. R. R. Co.*, 29 Penn. St. 154 ; *Pendleton* v. *Fay*, 2 Paige, 202 ; *Shaw* v. *Spencer*, 100 Mass. 388.)

The plaintiff contends that this transaction does not come within the rule to which we have alluded. That the notes were not received by him with knowledge that the discount

*Ante*, p. 134.

was intended to be for the personal benefit of Kneeland, but on the contrary, they were regularly discounted in the usual course of business.

Plaintiff testified that several months prior to the purchase the president of the defendant spoke to him about discounting notes of the defendant. On May 26, 1884, Kneeland sent him a check of the Mercantile Trust Company for $7,650, drawn by it, on itself, to the order of Kneeland, and indorsed by him, with a request that he cash it and hold it for a few days. Plaintiff did not agree to hold it, but paid Kneeland the face of the check. The check was retained by plaintiff until June twenty-seventh, when Kneeland sent to him the note in suit and two others. Plaintiff discounted the notes, and, as a consideration therefor, gave Kneeland the check of the Mercantile Trust Company. After deducting the discount and interest on the money advanced on the check, the delivery of the trust company check constituted an overpayment of $283, which amount Kneeland paid to the plaintiff the following day. And the plaintiff insists that neither in the communication from Kneeland nor in his reply thereto, was it suggested that the notes were to be given or taken in payment of any indebtedness of Kneeland. That while he gave in payment a check which bore the indorsement of Kneeland, it was perfectly good without such indorsement. He could have obtained the money on it any time. It made no difference to either party whether Kneeland or the plaintiff should collect the check from the trust company. That if he had given his own check to Kneeland for the notes and collected the other from the trust company, the effect of the transaction would not have been different than that which took place.

While this evidence is undisputed, except in so far as the plaintiff's own statements may be said to be in conflict, still as this claim is based upon the testimony of a party to the action, the defendant would have been entitled to a submission to the jury of the question whether plaintiff understood that Kneeland was using the notes for his own benefit instead of borrowing money thereon for the corporation.

As both parties requested the court to direct a verdict, the omission to submit the question to the jury is not now of moment. If it were necessary, in order to support the judgment, this court would be required to adopt the evidence most favorable to the plaintiff.

But assuming, as to the facts, the contention of the appellant, then we have the plaintiff paying full consideration for the notes — for the presumption is that the trust company's check was good — under circumstances which imposed upon him the burden of inquiry as to whether their issuance was authorized.

If he had made inquiry of the officers of the corporation, and through them had ascertained the fact that·the notes were issued and delivered to Kneeland pursuant to a resolution of the board of directors of defendant, he would clearly be entitled to the protection of a *bona fide* holder without notice. For that resolution recited the existence of an indebtedness to the president for salary, and expressly authorized the issue of notes in the amount thereof "to be signed by the president, and countersigned by the treasurer in the usual way and form." It furnished information, therefore, that Kneeland was using the notes in the manner expressly authorized. It constituted an appearance of authority upon which a purchaser, for value, could safely rely. True, the resolution recited that the notes were to be issued to pay Kneeland, president, a salary, but it did not pretend to give or fix a salary. It asserted an indebtedness for salary, and one dealing with a railroad corporation which has a right to pay its president a salary, and ordinarily does, is not bound to go behind such an assertion as was made by the defendant's directors, for the purpose of ascertaining whether the salary is legally payable. A different rule would be impracticable and would substantially incapacitate third persons from taking the paper of, or contracting with, corporations.

The principles enunciated in *F. and M. Bank* v. *B. and D. Bank* (16 N. Y. 125); *N. R. Bank* v. *Aymar* (3 Hill, 262); *E. Bank* v. *Monteath* (26 N. Y. 505), are applicable to the

rule we have stated. We are of the opinion, therefore, that if plaintiff had been informed of the resolution, such information, inasmuch as it was true in fact, would afford to him the protection of a *bona fide* holder without notice.

. But the plaintiff did not make inquiry at the time. He assumed that the issue, and proposed disposition, of the notes had been duly authorized. He trusted to the fact of authority, and not to the evidence of it. And can it be said, that the resolution which would have protected him, if he had been informed of it, cannot be invoked to aid him now? Does the purchaser of a note, under circumstances which devolve upon him the duty of inquiry, assume a greater risk than the burden of proving that which would have protected him had he diligently inquired, before making the investment? We think not. If the plaintiff had relied upon a statement by one of the officers, that a resolution had been passed, authorizing the issue of the notes, he would have assumed, necessarily, the risk of the statement being true. If true, it would protect him. Otherwise not. He stands in no different position because he did not first inquire. In either event, he would assume only the risk of proving the authorization by resolution.

This position has support in the reasoning of Judge ANDREWS in *Cowing* v. *Altman* (71 N. Y. 442), and *Williams* v. *Mitchell* (17 Mass. 101).

The views expressed lead to an affirmance of the judgment. The judgment should be affirmed.

All concur, except HAIGHT, J., not sitting.

Judgment affirmed.