(5 Misc. Rep. 543.)

### CLOSE v. POTTER.

(Superior Court of Buffalo, General Term. November 14, 1893.)

1. CORPORATIONS—LIABILITY OF STOCKHOLDERS—QUESTION FOR JURY.
    In an action to enforce a stockholder's liability on notes of the company it appeared that the notes were authorized at a special meeting of trustees, which was not called as required by the by-laws, to take the place of other notes then held by plaintiff. Some of the notes so taken up were authorized at a like irregular meeting of the predecessors of such trustees, and were sold to one L. (plaintiff's predecessor in title) by the company's president for his own benefit as a creditor. There was evidence that L. paid nothing for the notes, that she knew at the time that the company's debts exceeded its assets, and that she understood that the stockholders were liable to creditors. There was no satisfactory evidence as to when any part of the indebtedness represented by such notes was actually incurred by the company. Held, that the question as to whether or not plaintiff was a bona fide holder of such notes was for the jury.

2. SAME—EVIDENCE.
    In such case it was error to exclude evidence that the agent of L., who purchased the notes for her, knew at the time that the company's debts greatly exceeded its assets.

3. SAME—HARMLESS ERROR.
    The error in excluding such evidence was not cured by the subsequent evidence of such agent that he understood that the indebtedness was $40,000, and that the assets were at least $36,000.

Appeal from trial term.

Action by Charles J. Close against Edward W. Potter to enforce defendant's liability as a stockholder of the American Bit Brace Company. From a judgment entered on the verdict of a jury directed by the court in favor of plaintiff, defendant appeals. Reversed.

For decision on demurrer, see 21 N. Y. Supp. 1086.

Argued before TITUS, C. J., and WHITE, J.

Frank F. Williams, for appellant.

Simon Fleischmann, for respondent.

WHITE, J. In 1887 the American Bit Brace Company was incorporated, under the manufacturing law of 1848, with a capital stock of $50,000, which was never all paid, nor was any certificate ever made or filed as required by law to exempt stockholders from liability to creditors. The defendant is a stockholder in the corporation to the extent of $2,400, and his stock was issued for cash, and not for property. The by-laws of the corporation provide, among other things, that its affairs shall be managed by a board of five trustees, each one of whom shall own at least five shares of stock. Austin R. Preston, Charles P. Brady, with others, were elected trustees on December 8, 1890, and Preston was elected and continued to act as president of the corporation until January 12, 1892, and Brady was elected and continued to act as secretary and treasurer until the same date. Under the by-laws it is the duty of the secretary to dispose of any notes which the corporation may have occasion to give, but only as directed by the board of trustees, and no authority is conferred by by-law upon any other officer to issue such notes in any case. The by-laws provide that special meetings of the board of trustees may be called at any time on the written request of any trustee by notice thereof duly served on each trustee by the secretary, and that no special meeting shall transact any business other than that specified in the notice calling the meeting. What is designated in the minute book of the corporation as a special meeting of the board of trustees was held on January 2, 1892, at which Preston, Brady, and a trustee named Macomber were present. No notice was given of this meeting, nor of the business proposed to be transacted by it. At this meeting the three officers above named determined that the corporation should issue the two $5,000 notes in question in this action and others, and that said notes should be delivered to Preston, as the agent of the corporation, for negotiation and sale, and that, if sold, the proceeds should be used in paying an indebtedness from the company to Preston and his uncle and brother; and thereupon the two promissory notes for $5,000 each were executed by Preston and Brady in the name of the corporation and delivered to Preston, with instructions to negotiate the same, and use the proceeds, in case of sale, for the purposes above mentioned. On February 27, 1892, Gertrude E. Lee, through her husband and agent, George A. Lee, gave to said Preston a check on the Third National Bank of this city for $10,000, payable to the order of the corporation.

and on the same day Preston gave back to Mrs. Lee his check for the same amount on the same bank, as is alleged, in payment of that sum in a transaction involving a much larger amount. Both checks were paid and passed through the bank. It was known to Mrs. Lee at this time, according to the evidence of her husband, that the corporation was indebted to various parties for more than $40,000, and understood by him that its assets were worth at least $36,000. She also understood that the stockholders were liable to creditors for the reason that no certificate had been filed as required by law to relieve them from liability. On May 7, 1892, Arthur C. Good, who had then become president in place of Preston, William H. Walker, who had become secretary in place of Brady, and L. C. Wilcox, who was a trustee, met at what is designated a special meeting of the board of trustees on the minute book of the corporation, and determined to take up and retire the two $5,000 notes hereinbefore mentioned, which it is claimed were then held by Charles J. Close, the plaintiff herein, by giving to said Close a note at ten days for the amount of the other two, one of which fell due two days before, and the other of which would not become due until some four months thereafter, and that determination was carried out; and as soon as possible, or at any rate as soon as convenient, thereafter, Close sued the corporation on the $10,000 note with others, recovered judgment upon them against the corporation by default, sold its tangible property on execution, realizing but a small sum therefrom, and within a reasonably short time proceeded to sue the stockholders whose fortune it was to appear as such upon the company's books as liable for its debts. While there is no direct proof as to the date on which this suit was begun, it is assumed not to have been prior to August 1, 1892, as the summons bears that date, and, in the nature of things, that is about as soon as it could have been done. About one-half of the indebtedness represented by the note on which Close recovered his judgment appears to have been the amount of promissory notes maturing more than one year prior to the date of that note.

The facts to which attention has now been called in connection seem sufficiently to define the questions which it is necessary to pass upon on this appeal. The trial court disposed of the case apparently upon the theory that the plaintiff occupies the position of a bona fide holder of the two $5,000 and the $10,000 notes within the law merchant, and that consequently evidence impeaching their validity was inadmissible. The witness Lee, who managed the business for his wife, was asked if he knew when he took the notes that the debts of the corporation greatly exceeded its assets, which would, of course, include the liability of stockholders. The plaintiff objected to the evidence, and it was excluded, on the ground that it was immaterial and irrelevant. I think the evidence was proper, and should have been admitted, and that, notwithstanding the subsequent statement of the witness that he understood that the indebtedness was $40,000, and that the assets were at least $36,000, the erroneous ruling was not cured. The question whether Mrs. Lee actually paid the corporation the face of these notes for them in

good faith, in the usual course of business, without notice of any facts which might affect their validity, was an important one, and the evidence excluded would have had some bearing on that question. Every person who takes and holds commercial paper is not protected by the law merchant as a bona fide holder, and, in my judgment, whether the plaintiff is entitled to such protection is for the jury. The transactions themselves, as well as what the witnesses say about them, constitute important evidence as to the real purpose sought to be accomplished by them. No claim can be seriously urged that the corporation was in any manner benefited by them, nor can it be said that the cash account of Mrs. Lee was at the close of the day either augmented or diminished by those transactions in so far as the notes in question were concerned, while it would seem that the late president of the company had been benefited to the extent of realizing $10,000 in cash in part payment of his claims against the company. Whether the company actually received the $10,000 in the sense that it was intended to or did in fact become its property is, as it seems to me, a question of fact in the case. Did the actors in this transaction intend that the corporation should benefit by it, or did they intend simply to utilize the corporation and its bank account merely as a conduit through which to transmit the money deposited to its credit in form to Preston? If the question as to the plaintiff being a bona fide holder within the law merchant is an open one, it follows that the question as to whether the notes which form the basis of his claim are valid and subsisting claims against the corporation is also an open one, and I am of the opinion that those are open questions on the evidence, and should have been submitted to the jury. Bank v. Diefendorf, 123 N. Y. 191, 25 N. E. Rep. 402. The purpose of the notes in question was to take the place of others outstanding when they were made; and, while it was testified that some of the notes thus merged in those given to replace them represented original indebtedness, there is no satisfactory evidence as to when any part of the indebtedness represented by the notes in question was actually incurred by the corporation. All valid notes, whether given for an indebtedness at the time it is incurred or in renewal of such, represent original indebtedness. The note is not the indebtedness, but evidence of it, and, if renewed a hundred times, the note last given in renewal still represents the original indebtedness. Jagger Co. v. Walker, 76 N. Y. 521. Furthermore, the plaintiff was bound to establish by competent proof the validity of the notes, and that their negotiation was authorized by the corporation. People's Bank of City of New York v. St. Anthony's Roman Catholic Church, 109 N. Y. 512, 17 N. E. Rep. 408. Whether the evidence given did not establish the fact was a question for the jury. The transactions by which these notes were negotiated were certainly not in compliance with, but in violation of, the by-laws of the corporation.

The decision of this court on the demurrer to the complaint, reported in 21 N. Y. Supp. 1086, is not an adjudication against the defendant upon the merits. The substance of that decision, so far as it has any proper application to the case as it now stands, is that

the American Bit Brace Company was not legislated out of existence so as to relieve its stockholders from liability to creditors by the amendments to the act of 1848, nor by the revision of the corporation laws, which became of force May 1, 1891; and that chapter 588 of the Laws of 1892 in no manner affects the rights of the parties to this action; and that the liability of the defendant herein must depend upon the law as it was when the indebtedness was incurred by the corporation, which forms the basis of the claim asserted against him. The plaintiff contends that the failure to comply with the by-laws of the corporation regulating the calling of special meetings of its board of trustees is of no consequence, for the reason, as he puts it, that "the by-laws of a corporation are not binding on third parties as to limitations of authority which, except for the by-laws, would be construed as within the apparent scope of the corporation's agents." As an abstract principle of law he is right, but in the case at bar it was not within the apparent scope of the trustees of the American Bit Brace Company to make and sell its promissory notes in the market. The articles which it was authorized by law to manufacture and sell were of a different nature. The plaintiff recognized and acted upon the true interpretation of the law in this respect upon the trial when he sought to establish the authority of the officers making and negotiating the notes of the corporation by proving their action at the meetings of January 2d and May 7th. The relation which existed between the trustees of the corporation and the defendant was one of trust and confidence, and, if the object of the transactions through which the notes in question were made and delivered was solely to benefit one or more of the trustees who participated in them, to the injury of other stockholders, and the plaintiff is not a bona fide holder within the law merchant, the transactions were void, and those are questions of fact in the case. The case of Wilson v. Railway Co., 120 N. Y. 145, 24 N. E. Rep. 384, cited by the plaintiff in support of his contention that under the evidence the plaintiff is a bona fide holder of the notes, in my opinion does not help him. In that case the note was given for services, and was duly authorized by the company. It is unnecessary to discuss the claim that the fact that the trustees who made and negotiated the notes in question did not own the amount of stock which the by-laws required, but it would seem that such a proposition should not be sustained to defeat a claim on commercial paper of a corporation in the hands of one taking it in the usual course of business for value before maturity, without notice of any fact which might affect its validity. I think the case should have been submitted to the jury, and therefore that the judgment appealed from should be reversed, and a new trial granted, with costs to abide the event.