SECURITY BANK OF MINNESOTA *vs.* JOHN P. KINGSLAND, *et al.*

Opinion filed November 5th, 1895.

**Corporations—Pledge of Notes—Authority to Indorse—Bona Fide Indorsee —Subpledgee.**

A corporation was the owner and in possession of certain promissory notes payable to itself. The corporation was indebted to its secretary—who was also its treasurer—for funds advanced to the corporation by such officer. By a resolution of its directors the notes were delivered and turned over to said officer as collateral to its said debt for advances. That resolution did not in terms authorize the indorsement of the notes in any manner, nor authorize the negotation of the notes by its said officer. Pursuant to said resolution, the notes were delivered to the officer, who subsequently repledged the notes to the plaintiff to secure a personal loan to himself, and, after indorsing the notes by an unlimited indorsement in the corporate name, he delivered the same to the plaintiff to secure said personal loan. The plaintiff took the notes with notice of the facts above set out. *Held*: (1) That the resolution of the board did not itself clothe the officer with authority to indorse the paper, and that such officer had no implied authority as an officer to indorse the paper for his individual use. (2) The loan transaction was *prima facie* illegal, because, upon its face, it involved the indorsement and delivery of the property of the corporation to secure a personal loan to the officer. Under such circumstances, the plaintiff, in order to show that it received the paper in due course of business, had the burden of showing that the officer who made the loan had authority to indorse and transfer the paper as was done. No such evidence was offered, and hence it did not appear that the paper was in fact received in due course of business. (3) The action was against the makers of the notes, and the defense was fraud, and failure of consideration as between original parties. If such defense were made out at the trial, the plaintiff, as subpledgee of the paper, with knowledge that the party from whom he received it held it simply as a pledge, could only recover the amout due from the corporation to the original pledgee, even if the evidence established authority on the part of such pledgee to endorse the notes in the corporate name of the subpledgee. No evidence was offered tending to show the amount due the original pledgee. This was a fatal defect in the plaintiff's case.

Appeal from District Court, Grand Forks County; *Templeton,* J.

Action by the Security Bank of Minnesota against John P. Kingsland and others on notes. There was a verdict for plaintiff, and from an order granting a new trial plaintiff appeals.

Affirmed.

*Burke Corbet,* (*Van Fossen, Frost & Brown,* of counsel) for appellant.

A denial that plaintiff is the owner and holder of the notes in suit, raises no issue. It does not meet the allegation of endorsement upon which plaintiffs title depends. *Poorman* v. *Mills & Co.*, 35 Cal. 121; *Wedderspoon* v. *Rodgers*, 32 Cal. 569; *Fleury* v. *Rodgers*, 9 How. Pr. 215; *Sherman* v. *Bushnell*, 7 How. Pr. 171; *Caswell* v. *Bushnell*, 14 Barb. 393. The answer does not allege a knowledge on the part of plaintiff of the want of consideration for the notes sued upon. *Parison* v. *Biddiker*, 15 Pac. Rep. 811; *Rand* v. *Company*, 28 Pac. Rep. 661; *Hunter* v. *McLaughlin*, 43 Ind. 338; *Morris* v. *Harshberger*, 39 N. E. Rep. 521. Defendant should have by special plea denied the authority of an officer of the Universal Gas & Construction Co., to transfer the notes. *McIntyre* v. *Preston*, 5 Gil. (Ill.) 48; *Frye* v. *Tucker*, 24 Ill. 180. As to anything beyond the bona fides of the holder the defendant who owes the debt has no interest. *Gage* v. *Kendall*, 15 Wend. 640; *City Bank of New Haven* v. *Perkins*, 29 N. Y. 554; *Hall* v. *Wilson*, 16 Barb. 551; *Phelen* v. *Moser*, 67 Pa. St. 59; *Rodgers* v. *Squires*, 98 N. Y. 49.

*T. R. Bangs* and *Bangs & Fisk*, for respondent.

Appellant cannot be treated as an indorsee of the notes in due course as defined by § 4487, Comp. Laws. *Robert* v. *Hall*, 37 Conn. 205; *Claflin* v. *Bank*, 25 N. Y. 293; Jones on Pledges § 105; *Maitland* v. *Bank*, 40 Me. 540; *Citizen's Nat. Bank* v. *Hooper*, 47 Md. 88; 2 Rand. Com. Paper, § 1012; Edwards on Bills and Notes, § 102; 1 Beach on Pr. Corp. § 205; *Wilson* v. *Railway Co.*, 120 N. Y. 145, (24 N. E. Rep. 384;) *Bank* v. *Savery*, 82 N. Y. 291; *Comstock* v. *Hier*, 73 N. Y. 269, (29 Am. Rep. 142.)

WALLIN, C. J. The facts necessary to the decision of this case may be stated as follows: The action is upon two promissory notes, each dated July 28, 1892, and falling due in one year from its date. The notes were payable to the order of the Universal Gas & Construction Company, and were delivered to the payee by delivering the same to one E. S. Austin. The payee named in the notes was a corporation organized under the laws of the

State of Illinois, and when said notes were executed and delivered it was engaged in business at Minneapolis, in the State of Minnesota. Said E. S. Austin was the secretary and treasurer of the corporation. Said corporation had sold to the defendants a patent right for the manufacture of a certain kind of gas, and the notes were given as part payment for the purchase money. On the 24th day of August, 1892, said E. S. Austin borrowed of the plaintiff through its president, the sum of $6,500, and gave the plaintiff his individual note for that sum, and the loan was not in any sense a loan for the use and benfit of said corporation. The two notes in suit are the collateral notes delivered to the plaintiff by Austin. The note given to the plaintiff for $6,500 has never been paid, but has been renewed and increased in amount, and the collateral has been retained to secure the renewal notes. The complaint averred that the two notes given by the defendants,—the collateral notes aforesaid—were, before their maturity, "indorsed, sold, assigned, and transferred to the plaintiff." Issue was joined in the answer upon such sale, indorsement, and transfer. The answer also alleged want of consideration for the notes, and stated that said patent right was worthless, and dangerous in use. At the trial considerable evidence was offered upon the subject of consideration between the original parties, but, as this feature is not, as we view the record, material to a decision of the case, such evidence need not be further mentioned. Upon the issue of the sale of the notes in suit to the plaintiff, the plaintiff produced the notes, and put them in evidence. They were, when produced at the trial, indorsed as follows: "Universal Gas & Construction Company, by E. S. Austin, Secretary and Treasurer." The plaintiff called as a witness in its behalf one F. A. Chamberlain, who testified in substance as follows: "I reside in Minneapolis. Am a banker. Am president of the Security Bank of Minnesota, plaintiff in this action. Have been since January, 1892. Exhibits A and B are the notes described in plaintiff's complaint. These notes were presented to the bank—to me—by Captain E. S. Austin, who

desired a loan, and offered these notes as collateral security for the loan which he wished to obtain. This was in August, 1892. We made some inquiry in reference to the notes, and consented to make the loan. On August 24, 1892, we loaned to Capt Austin sixty-five hundred dollars, taking as collateral security for the loan the notes in question. There is to-day owing from Capt. Austin to the Security Bank of Minnesota on the original indebtedness seventy-five hundred dollars and interest from Aug. 19, 1893. None of these notes have been paid, or any part thereof. Capt. Austin is a gentleman residing in Minneapolis. Have known him five or six years before this transaction. Have not been intimate friends. Nothing more than a customer in the bank. This, I think, is the first loan ever made him. I made this transaction with Mr. Austin. These notes were indorsed at the time they were delivered, when the first note was executed by Mr. Austin. I have no recollection of seeing him indorse the paper. The writing I saw on the back of the note was as it appears there now. The indorsement appears now as it did then." E. S. Austin testified in plaintiff's behalf in substance as follows: "Am acquainted with the Universal Gas & Construction Company. Am secretary and treasurer of the company. I received these notes from Mr. James Twamley, as secretary of the company. They were turned over to me some time later on, and I wished to raise some money, and I took them down to the Security Bank, to show them to Mr. Chamberlain, the president of the bank. In the meantime the notes were turned over to me in due form for money advanced for the Universal Gas & Construction Company. Prior to the time of receiving the notes they were owing me for funds advanced. I took the notes to Mr. F. A. Chamberlain, and stated the circumstances to him, and he took the matter under consideration, and said he would look it up. He wanted to know how much money I wished secure, and I told him sixty-five hundred dollars. This was a few days after I first spoke to him, and he then loaned me that amount, and I then indorsed the the paper." On cross-examination Mr. Austin testified: "The

Universal Gas & Construction Company is capitalized at three millions. I have the original note that I gave the bank, but not here. I endorsed this paper over to the bank. Was the owner of it. The board of directors of the company held a meeting, and turned the paper over to me as collateral to money I had advanced. Have no record of that meeting here. Corporation has a seal. I don't know as there is any provision in by-laws as to transfer of paper. Q. Now, you say you indorsed this paper over to the bank, did you not? A. I did. Q. You owned this paper at that time, did you? A. I did not, sir. It was company paper. It belonged to the company. Q. How did this paper belong to the company if they had delivered it over to you? A. It was in my keeping as a matter of fact after they held that meeting. Q. When they held that meeting, then this paper was turned over to you? A. To me. Q. How long after? A. about thirty days. Q. So at the time this paper was put up as collateral it was corporation paper? A. It was corporation paper at that time. Q. And that is the way it was indorsed. 'The Universal Gas & Construction Company, by E. S. Austin, Secretary and Treasurer'? A. Yes; that is all right. Q. And when you got that indorsed you say you indorsed it at the time you got this $6,500? A. Yes sir. Q. And at the time you gave the original note? A. Yes, sir; as collateral. Q. Right at the same time you got this money you indorsed that on, 'The Universal Gas & Construction Company, by E. S. Austin, Secretary and Treasurer'? A. Yes sir. Q. And that is as true as any other of your testimony, is it not? A. That is right. Yes, it is. I did not own the paper at the time I transferred it. It belonged to the company. It was turned over to me, and was in my keeping, after they held that meeting. ·It was indorsed, 'The Universal Gas & Construction Company, by E. S. Austin, Secretary and Treasurer.' It was indorsed right at the time I got this money." Upon the question of the indorsement of the notes to the plaintiff, defendants offered witnesses who testified in effect that at or about the time the notes fell due they saw them in Grand Forks, and they

were not then indorsed as they appeared, when put in evidence at the trial in this: that the words "The Universal Gas & Construction Company by" were not then written on the back of the notes, and did not form a part of the indorsement. Upon the question of the transfer of the paper to the plaintiff the trial court instructed the jury as follows: "Gentlemen of the jury: This is an action upon two promissory notes dated July 28, 1892, one for the sum of four thousand dollars and the other for the sum of five thousand dollars, each due one year from date. The making and delivery of these notes by the defendants is admitted. The payee in the notes is the Universal Gas & Construction Company. The plaintiff bank in this case claims now to be the owner of the notes, and brings this action as indorsee of this paper. The presumption is that plaintiffs are the bona fide holders of this paper; that is, that they obtained the paper before maturity, that they paid full value for it or part value for it, that they obtained it in due course of business, and that they obtained it without notice of any equities existing between the makers and payees of the notes, if any did exist. Now, so far as the testimony in this case stands, I charge you that the evidence shows that the plaintiffs obtained this paper before maturity; that they parted with value when they received the paper, and as consideration for receiving the paper; and that they had no notice of any equities, if any existed, between the original parties to the paper. As to whether or not they took the paper in due course of business within the meaning of the law, is a question I shall submit to you to determine, and that is the first question in this case; for if you find, under the instructions of the court, that they took this paper in due course of business, then your verdict in any event must be for the plaintiffs for the amount of their interest in the paper at least, notwithstanding the original makers may have a defense as against the payee of the note. Now, in order that a person may be said to take paper—commercial paper—in due course of business, the paper must be, where it is made payable to order, as this paper is made, legally indorsed. If, gentle-

men of the jury, you believe under the evidence of this case that this paper in suit was indorsed at the time it was delivered to Mr. Chamberlain, the president of the bank, by Mr. Austin, as it is now indorsed, then I charge you, as far as the evidence in this case shows, the paper was taken in due course of business, and the plaintiff must recover. If, however, gentlemen of the jury, you believe that at the time this paper matured, to-wit, on the 29th day of July, 1893, the words 'Universal Gas & Construction Company' were not indorsed upon either of these notes, then I charge you that plaintiff cannot recover, unless there was a consideration moving between the makers and the payees of the note." The case was submitted to the jury, and a verdict was returned for plaintiff for the amount of its claim. Defendant moved in the District Court upon a bill of exceptions to vacate the verdict, and for a new trial. The motion was granted, and from the order plaintiff appeals to this court.

In connection with the order granting a new trial the learned judge who made the order, following an excellent rule which prevails in some other states (but is seldom observed in this state,) made and filed the following memorandum of reasons: "In the above entitled action a new trial will be granted. I have no doubt that the plaintiff received the paper in the utmost good faith, before maturity, and for value. The notes, however, in my opinion were not taken in the regular course of business, they having been pledged by an officer of the payee for his private debt. *Wilson* v. *Railway Co.*, 120 N. Y. 145, 24 N. E. 384; *Meads* v. *Bank*, 25 N. Y. 143; *Claflin* v. *Bank*, 25 N. Y. 293; *Shaw* v. *Spencer*, 100 Mass. 382; *Roberts* v. *Hall*, 37 Conn. 205." The order granting a new trial is assigned as error in this court, and the question presented by such assignment is the only point we are called upon to determine. A review of the testimony offered by the plaintiff brings out the following facts: First. The notes in suit were, when executed and delivered to the payee, the property of the corporation to which they were made payable on their face, and have ever since been, and now are, the property

of said corporation. Second. There is no evidence tending to show that the corporation in terms authorized Mr. Austin to indorse said notes as they were indorsed or otherwise. Third. There is no evidence tending to show that the corporation owing the notes ever in terms authorized Mr. Austin to negotiate the same by sale or otherwise, or to part with the possession thereof for any purpose, or in any manner. Fourth. The notes were indorsed by a general indorsement made by E. S. Austin as an officer of the corporation, and in behalf of the corporation; and E. S. Austin did not indorse said notes individually, nor did he claim, in making the indorsement, or at any time, to act otherwise than as a representative of the corporation in which he held the office of secretary and treasurer. Fifth. When the bank loaned the money to Austin, its president was informed by Austin of the circumstances under which he (Austin) acquired possession of the paper, and was then informed, to some extent at least, of Austin's right thereto; *i. e.* the president was advised by Austin, during the negotiations for the loan, that the paper was delivered to Austin by the board of directors of the payee named in the notes as collateral to secure advances made to it by Austin. Austin testified: "I took the notes to Mr. F. A. Chamberlain, and stated the circumstances to him." Sixth. The notes were generally indorsed by the corporation by its secretary and treasurer, E. S. Austin, at the time the loan was made; nor prior thereto. This resume of the facts in the record embraces only the conceded facts, and such as are brought out by the plaintiff's evidence; and upon such facts the question arises whether the bank—the plaintiff—obtained possession of the notes in the regular course of business; that is, in accordance with the usages of merchants. One fact in the loan transaction is very prominent. It is this: Pending the negotiations for the loan, the bank, through its president, was informed that E. S. Austin was seeking a loan for his individual use, and was offering paper belonging to another—the corporation—as security for such loan. The president knew that the paper offered as collat-

eral was the property of the corporation, and was payable to the corporation on its face, and that it had not been indorsed prior to the loan. Austin testifies that he made the indorsement then and there, at the time the loan was made. The president of the bank was, from the nature of the case, chargeable with knowledge that Austin never acquired the right to sell the paper or put it afloat in the business community by an unlimited general indorsement. The bank was informed that Austin had possession of the notes only as a pledgee to secure a claim of his own against the corporation whose officer he was. From our standpoint, the surroundings of the loan were of a character to put a prudent man upon inquiry to ascertain the true facts, and, therefore, that the bank in making the loan, assumed the burden of proving that the facts which could have been discovered by inquiry would have protected the bank. *Wilson* v. *Railway Co.*, 120 N. Y. 145, 24 N. E. 384. *Prima facie*, the act of pledging or indorsing the paper of the corporation was irregular, and hence the bank was bound to prove that it was regular, and authorized by the corporation. The mere fact that Austin was secretary and treasurer of the gas company would not clothe him with power to indorse and pledge the paper of his principal to secure a personal loan to himself; nor do we think that the fact that the board of directors had authorized Austin to hold its paper as collateral to a debt due Austin is alone sufficient to authorize that officer to indorse the paper to himself. It may well be true that the corporation was unwilling to assume the burden of paying the paper in full at maturity, as it would be obliged to do, regardless of the amount of its debt to Austin, if the paper was indorsed generally, and negotiated to good faith holders. *Claflin* v. *Bank*, 25 N. Y. 293. An agent never has implied authority to cast burdens upon his principal for his individual advantage. *Clarke* v. *Wallace*, 1 N. D. 404, 48 N. W. 339. Whatever the ultimate facts may prove to be, the plaintiff's evidence in this record discloses that Austin held the paper only as a pledgee to secure him for certain advances made to the gas company, and that this fact was made

known to the bank before it made the loan. Under such circumstances, we may assume, for the sake of argument, that the original pledgee, Austin, had implied authority to indorse the paper. Nevertheless, his right to do so was limited. Austin could not subpledge the paper to one having notice of the facts to an amount beyond his own claim against the gas company; nor could the bank, knowing that Austin was a mere pledgee, take any better right or fuller power over the paper than that possessed by Austin as the original pledgee. This principle is elementary. Colebrooke, Collat. Sec. § § 180, 181. Upon the assumption that Austin had an implied authority to indorse the paper—which we by no means concede—the bank taking the paper with notice that Austin was a mere pledgee of the paper, would occupy no better position in court that that occupied by Austin. The bank, as subpledgee, in an action against the makers, in which the makers set up fraud and failure of consideration as between original parties, could, if such defense were established, only recover to the amount of the debt due from the corporation to Austin. At the trial no evidence was offered tending to show the amount due from the gas company to Austin, or when that debt fell due, nor does it appear by the record that any written evidence of such debt ever existed. We think this alone was a fatal omission in plaintiff's evidence. Under the evidence in this case, the amount of the recovery of the bank as an innocent good-faith subpledgee could not, as against equities between original parties, have exceeded the sum due the original pledgee, and there is no evidence in the record as to the sum due the original pledgee.

We think the order granting a new trial was clearly proper, and must be affirmed. All the judges concurring.