John MacCrate, Off. Ref.
Judgment for the plaintiff for the face amount of the notes, with interest from August 1, 1954 and costs.
I find that the plaintiff gave value for the notes which were transferred to him. He owned the stock which was in the name of his daughter. That stock and two United States bonds were delivered by him to the payee at the time of the transfer by the latter to the plaintiff.
The presumption that plaintiff was a holder in due course (Negotiable Instruments Law, § 91) has not been overcome. Past indebtedness of the corporation maker to Isidore Ostrover, the payee, was a good consideration for the issuance of the notes (Negotiable Instruments Law, § 51). The indebtedness to the payee exceeded the amount of the notes and the value *296 of the two Cadillac cars which were transferred by the maker to the payee and his son. In view of the indorsements, the plaintiff could accept the notes as valid and subsisting obligations of the maker (Negotiable Instruments Law, § 116). The issuance of the notes did not constitute a present transfer of any asset of the maker to the payee. Creditors of the maker might have been able to set aside the transfer of the automobiles but the notes were not illegally issued. All the stockholders and officers of the corporation agreed to their issuance. Defendant Bragman voluntarily indorsed them. No fraud was practiced on him. He was present when the notes were executed. Presumably the corporation’s president and co-indorser did not ask his friend Bragman to enter into an arrangement for the commission of a crime. The agreement signed by the officers and stockholders did not call for the transfer or surrender by the Ostrovers of their stock to the maker or to Unger and plaintiff had no notice of any such agreement or of any fact which called for him to question the completeness of the warranty of the indorsers or go beyond the written agreement to ascertain that the notes had been lawfully issued. (Wilson v. Metropolitan El. Ry. Co., 120 N. Y. 145.)