JOHN D. CHEEVER, Plaintiff, *v.* THE PITTSBURGH, SHENANGO AND LAKE ERIE RAILROAD COMPANY, Defendant.

*Fraudulent misappropriation of notes by the president of a corporation — notice sufficient to put a purchaser on inquiry.*

On the 17th day of February, 1888, the directors of a railroad company passed a resolution authorizing its president to make a contract for the purchase of flat cars for the use of the company, and in carrying out such purchase, to give notes of the company to the amount of $10,000. On the same day the secretary of the company prepared two notes for signature bearing a later date, which were drawn to the order of one Bruen, the private secretary of the president, and were signed by the president and the secretary of the company.

It was suggested by the secretary of the company that the notes might be lost, and before maturity pass into the hands of a *bona fide* holder, to avoid which risk the president stated that the notes could be made payable to the order of Bruen, who would not indorse them until the president should be ready to use them in the accomplishment of the purpose aimed at by the resolution.

The president did not use the notes directly or indirectly for the purchase or in payment of flat cars. On the nineteenth day of March, a firm, of which the railroad company's president was at that time the senior member, borrowed from one Brooks $30,000, giving their note therefor, and as collateral thereto, among other things, the notes in question, which at that time bore the indorsements of Bruen and of such firm. Subsequently, long after maturity, Brooks became the owner of the collateral, and thereafter they were duly transferred to one Cheever, who brought an action thereon against the railroad company.

*Held*, that the facts above stated authorized the conclusion of law that the president of the company fraudulently appropriated the notes to his private use.

Whatever is sufficient to put a person of ordinary prudence on inquiry is constructive notice of everything to which that inquiry would reasonably have led.

Brooks testified upon the trial that the president of the railroad company told him, at the time he turned over the railroad company's notes as collateral security for the personal debt of the firm of which the president was a member, that he was the president of the defendant, and Brooks knew that he was. pressed for money.

*Held*, that the facts were sufficient to put Brooks upon inquiry ;

That as the plaintiff was a purchaser after maturity, he was in no better position than Brooks.

MOTION by the plaintiff, John D. Cheever, for a new trial upon exceptions ordered to be heard at the General Term in the first instance, upon the dismissal of the plaintiff's complaint at the New York Circuit on the 19th day of April, 1893.

*Austin G. Fox*, for the plaintiff.

*Frank Sullivan Smith*, for the defendant.

PARKER, J. :

The directors of the Pittsburgh, Shenango and Lake Erie Railroad Company, on the 17th day of February, 1888, passed the. following resolution : " *Resolved*, That the president be and hereby is authorized to make a contract for the purchase of fifty flat cars for the use of this company, and is authorized in carrying out this purchase to give notes of this company to the sum of $10,000."

On the same day the secretary of the company prepared two notes for signature, bearing a later date, and they were signed by the secretary and president.   The notes were in the form following :

" $5,000.00.            " GREENVILLE, PA., *Feb'y 24th*, 1888.

" Three months after date the Pittsburgh, Shenango and Lake Erie Railroad Company promises to pay to the order of John T. Bruen, five thousand dollars, at the American Exchange National Bank, New York city.

" Value received.

" THE PITTSBURGH, SHENANGO AND LAKE<br>ERIE RAILROAD COMPANY.

" Attest :                    By M. S. FROST, *President.*"

" E. S. TEMPLETON, *Secretary*.

The secretary was not in favor of the execution of the notes at that time, but the president, who had principal charge of the finances of defendant, explained that he might not be able to induce a car company to accept the notes in payment for cars, and then it would be necessary to have the notes discounted, and the proceeds used for that purpose. To the suggestion of the secretary that if the notes should be lost, and finally before maturity pass into the hands of a *bona fide* holder, the company might sustain serious loss, the president answered, that such risk could be avoided by making them payable to the order of his private secretary, Bruen, who would not indorse them until the president should be ready to use them in the accomplishment of the purpose aimed at by the resolution.

The president did not use the notes directly or indirectly for the purchase or in payment of flat cars.

But on the nineteenth day of March, the firm of M. S. Frost & Son, of which defendant's then president was the senior member, borrowed from Francis A. Brooks the sum of $30,000, giving their note therefor, and as collateral security thereto, among other things, the notes in question. These notes then bore the indorsements of Private Secretary Bruen and M. S. Frost & Son.

Subsequently, but long after maturity, Brooks became the owner of the collateral, and thereafter they were duly transferred to this plaintiff.

The facts to which we have briefly alluded are uncontradicted. No material fact is anywhere in the record controverted. They command the conclusion of law that the president of the company fraudulently appropriated these notes to his private use.

With this remark, we dismiss from further consideration the request of the plaintiff to have the question of fraud submitted to the jury. The plaintiff urges that the fraud being established, the notes are still valid obligations in the hands of a *bona fide* purchaser, and in the discussion he gives prominence to the fact that Brooks had no suspicion of the fraudulent conduct of Frost.

But it is not enough, in a case like this, that the purchaser be ignorant of the wrong in order to entitle him to claim the protection which the law affords to the good-faith purchaser of commercial paper.

There are cases in which it is not sufficient to close the eyes, and

say, I did not see; cases where the circumstances are such as to put the prudent man on inquiry, and if reasonable inquiry will develop the wrong, he cannot afterwards claim, as against the party sought to be injured, protection, because he did not know of the fraud.

One of the instances which calls for inquiry by the purchaser of commercial paper is where an officer of a corporation is attempting to make use of its business paper for his private purposes.

This rule is not unreasonable. The officer occupies a position of trust which oftentimes affords opportunities, and occasionally presents great temptations, to use his trust for a temporary personal benefit. The knowledge that such is the fact, and the further one that corporations are not accustomed to have dealings with their officers of such a nature as to make it necessary to give them their notes in payment, is sufficient to suggest to every man of ordinary prudence that the possession of the business paper of a corporation by one of its officers, which he avowedly intends to use in payment of, or as security for, a personal debt, is so far suspicious as to prompt inquiry touching his right to so use it. Hence the rule that he who takes the notes or securities of a corporation from one of its officers in payment of, or as security for, his individual liability, is bound to inquire into the circumstances under which the officer obtained possession of the notes or securities, and if he fails to make such inquiry, he does so at his peril. ( *Wilson* v. *M. E. R. R. Co.*, 120 N. Y. 145, and cases cited.)

Now Brooks testifies that Frost told him at the time he turned over this defendant's notes as collateral security for the personal debt of Frost & Son, that he was the president of the defendant, and certainly he knew that Frost was pressed for money, because he visited Brooks in Boston to obtain from him a loan of $30,000.

These facts should have prompted him to inquire how the president came to use the notes of this corporation, whose property had just come from the hands of a receiver, for his individual benefit, and in law he was bound to inquire.

Whatever is sufficient to put a person of ordinary prudence on inquiry is constructive notice of everything to which that inquiry would reasonably have led. (*Shaw* v. *Spencer*, 100 Mass. 388.)

Had he tried to obtain information on the subject he would naturally have first inquired whether the corporation had authorized

the issuing of the notes, and an examination of the resolution permitting their issue would have disclosed to him that they were issued for a specific purpose, to wit, the purchase of cars.

This information would have assured him that the president was without authority to use them in the first instance for his private purposes, therefore, he would have found it necessary to take a further step, and ascertain whether the notes had accomplished the object for which they were issued, and thereafter passed regularly into the hands of the president, or his firm.

All these facts Brooks would have discovered had he made the inquiry which ordinary prudence dictated and the law enjoined, and with such information in his possession there could be no recovery on the notes by him. Because he was bound to inquire and did not, he is deemed to have had constructive notice of such facts, with necessarily the same legal result as if he had obtained full knowledge of the facts. As the plaintiff is a purchaser after maturity he is in no better position than Brooks.

Plaintiff's exceptions overruled and defendant's motion for judgment granted, with costs.

O'BRIEN and FOLLETT, JJ., concurred.

Defendant's motion for judgment granted, with costs.