The Hanover National Bank of the City of New York, Appellant, *v.* The American Dock and Trust Company, Respondent.

*Discount of a note of an officer of a corporation — notice of the illegality of a warehouse receipt — corroboration of the statements of such officer — existing facts available although no inquiry is made — the question of authority is for the jury.*

The president of a storage company discounted his note at a bank, and gave as collateral security a paper purporting to be a warehouse receipt for certain cotton, signed by him as president of the storage company, and containing an indorsement that such receipt was only valid when signed by its president or treasurer. The bank accepted the collateral, discounted the note, and after the maturity thereof demanded of the storage company the cotton of which the receipt acknowledged the possession. Such demand was refused, inasmuch as such cotton had never been in the possession of such corporation.

*Held*, that as the bank knew that the person named in the receipt was the same person who, as president, had signed it, and that he was making use of it for his own personal benefit, such bank was thereby put upon inquiry touching such person's authority to issue the receipt.

That if such bank had made inquiry and had ascertained thereby that such president had authority to sign receipts, acknowledging that cotton had been stored by him with such storage company, it would have been protected in taking such collateral.

That if at the time when inquiry should have been made there existed 'facts establishing the authority of the president of the storage company as such to sign receipts, evidencing a contract between the storage company and himself, upon proof of the same the facts were as available to protect such bank as if it had inquired before accepting the collateral and had learned thereby of the same. (Follett, J., dissenting.)

Where a situation is present which the law declares should put a person of ordinary prudence upon inquiry, he is chargeable with constructive notice of everything to which that inquiry would reasonably have led and nothing more.

The facts considered and commented upon, on learning of which a lender would be justified in reaching the conclusion that an assumption of authority by the leading executive officer of a corporation to make a contract with it had been assented to and ratified by the corporation itself, and which would justify such lender in taking, as collateral to the personal note of the president of a storage company, its receipt, signed by such president, acknowledging the storage with it by him of certain merchandise. (Follett; J., dissenting.)

It is for the jury to pass upon the question of authority when the facts tend strongly to show an acquiescence by a corporation in its officer's assertion of his right to act for it.

APPEAL by the plaintiff, The Hanover National Bank of the city of New York, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the city and county of New York on the 12th day of May, 1893, upon the verdict of a jury directed by the court after a trial at the New York Circuit, and also from an order made on the 10th day of May, 1893, and entered in said clerk's office, denying the plaintiff's motion to set aside the verdict and for a new trial made upon the minutes.

*Thomas S. Moore*, for the appellant.

*Thadeus D. Kenneson*, for the respondent.

PARKER, J.:

The defendant is a corporation created by chapter 881 of the Laws of 1872, to act as a storage warehouse for cotton and other merchandise, and to issue receipts certifying the amount of the merchandise so deposited, which are negotiable and transferable by indorsement and delivery so that the transferee is deemed to be the owner of the merchandise specified, either absolutely or as a pledge for any advances or credits, subject to the payment of the company's charges accrued upon it. The plaintiff is a national bank engaged in general banking business in the city of New York, and has for a number of years been accustomed to loan money upon such receipts issued by the defendant or upon notes with receipts as collateral security; and for about seven years prior to 1891 it had frequently loaned money to Mr. Stone, the president of the defendant corporation, taking therefor his notes with warehouse receipts of the defendant as collateral.

About March 17, 1891, Stone applied to the plaintiff to discount his promissory note payable to plaintiff's order in ninety days for $5,000, and offered to the plaintiff as collateral for said note a paper writing in the form of the warehouse receipts issued by the defendant. It reads as follows :

"M. W. STONE, *Pres't.*            A. J. POUCH, *Vice Pres't.*
"F. N. POUCH, *Treas.*             A. C. HASOY, *Sec'y.*

"AMERICAN DOCK & TRUST CO.

"Number of Certificate,            Office, Cotton Exchange,
   "26,572.                            Rooms 50 and 51,
                                          "New York.

" NEW YORK, *Mar.* 11, 1891.

" Received on Storage at ' The American Docks,' for account of M. W. Stone, one hundred and seventy-two bales cotton.

" 151 S. Y. E.

" 21 C. U. V.

" Subject to the order of themselves on payment of the charges accrued thereon and surrender of this receipt.

" Weight or grade not guaranteed. Labor, 10 c. Storage per month, 10. Bales, 172. Store, 7.      M. W. STONE, *Pres't.*"

(On left hand margin :)

" This receipt is valid only when signed by either the president or treasurer.

(Indorsed :) " M. W. STONE."

The plaintiff discounted the note, paying the full amount thereof, less legal discount. After the maturity of the note the plaintiff demanded from defendant the cotton which the receipt acknowledged possession of. As the cotton was not and never had been in defendant's possession, plaintiff's demand was refused, and this action was thereupon instituted to recover its possession or value.

The question which the facts so far stated present was before this court in *Bank of New York National Banking Association* v. *This Defendant* (70 Hun, 152 ; 53 N. Y. St. Repr. 905). It was there held that as plaintiff knew that the Stone named in the receipt was the same person who, as president, had signed it, and that he was making use of it for his own personal benefit, it was thereby put upon inquiry touching Stone's authority.

Plaintiff's right of recovery was denied, and without further discussion the position then taken is reasserted. It is true that the plaintiff made no inquiry except of Stone, but if Stone did have authority to sign receipts as president, acknowledging that cotton had been stored by him with defendant, that fact would have been ascertained had inquiry been made, and would have protected plaintiff.

Whether the result is the same when the facts exist, and insufficient or no inquiry is made, was considered in *Wilson* v. *Met. Elevated R. R. Co.* (120 N. Y. 145–153), the court saying : " He assumed that the issue and proposed disposition of the notes had been duly authorized. He trusted to the fact of authority, and not to the evidence of it. And can it be said that the resolution which

would have protected him if he had been informed of it, cannot be invoked to aid him now? Does the purchaser of a note under circumstances which devolve upon him the duty of inquiry, assume a greater risk than the burden of proving that which would have protected him had he diligently inquired before making the investment? We think not." So here, if at the time when inquiry should have been made there existed facts establishing the authority of Stone, as president of the defendant, to sign receipts evidencing a contract between that corporation and himself, they are as available to protect the plaintiff as if it had inquired at first. Had it made inquiry resulting in an ascertainment of the facts which it now proves, assuming that they are sufficient to have authorized Stone as president to make such contracts with himself, still plaintiff would have been burdened with the necessity of proving them. Instead, it believed Stone's assertion of authority, but his representations under the circumstances surrounding their making were not binding upon defendant, because the occasion and the situation made them personal and not official. But if their truthfulness should be established by other evidence, the fact would protect plaintiff as fully as if it had the best evidence of it in its possession at the time of making the loan. In other words, when a situation is presented which the law declares should put a person of ordinary prudence on inquiry, he is chargeable with constructive notice of everything to which that inquiry would reasonably have led and nothing more. (*Cheever* v. *Pittsburgh & L. E. R. R. Co.*, 72 Hun, 380; *Shaw* v. *Spencer*, 100 Mass. 382.) This leads us to inquire what plaintiff would have found had it, instead of relying upon the individual assertion of Stone, made inquiry at the office of the corporation.

It would have found there the president, Stone, who has asserted over his official signature in this receipt that he personally had on storage 172 bales of cotton, and who, it is but fair to assume, would not have denied his authority to issue the certificate. An examination of the books would not have disclosed any authority given by resolution of the directors to the president to thus evidence contracts between himself and the corporation, nor discovered any resolution forbidding it. Further examination would have caused it to appear that on March 16, 1886, a certificate for forty-one bales of cotton was issued by M. W. Stone, vice-president, to M. W. Stone, which was subsequently used, returned and canceled in the regular course

of business, and a stub corresponding with the certificate made out at the time of the issuing of the certificate, and thereafter continuing among the records of the company, to which is attached a receipt signed by Stone acknowledging the receipt of the negotiable certificate. April 14, 1886, another certificate for eighty-five bales of cotton was issued by Stone as vice-president to himself; the stub is made out to correspond, and to it is attached a receipt for the negotiable certificate signed by Stone. Under date of May 24, 1886, is a certificate signed by Stone, vice-president, to himself for 261 bales of cotton; the stub is made out in the usual form, and to it is attached a receipt from Stone for the negotiable certificate. June 15, 1881, a certificate for 100 bales of cotton was issued by Stone as vice-president to himself; a stub was made out to correspond, to which was attached a receipt in the usual form, signed by Stone acknowledging the delivery of the certificate to him. Under date of November 29, 1881, a certificate for eighty-three bales of cotton was issued by Stone, vice-president, to himself, and he signed a receipt for it, which was thereupon attached to the stub corresponding to the certificate issued. All of the certificates referred to were used, returned and canceled in the regular course of business like the others; the receipts were signed, and stubs made out in accordance with the general custom. Under the practice of the defendant, if a man having a receipt for fifty bales of cotton calls for one bale, instead of making out a new receipt for forty-nine bales, one is indorsed off on the back, so that such indorsement represents the deliveries as made. Upon the back of the receipt of April 14, 1886, the following indorsements for delivery appear :

"INDORSEMENT FOR DELIVERY.

"The property mentioned below is hereby released from this receipt for delivery from warehouse.

| DATE | Merchandise. | Marks. | Signature. |
|---|---|---|---|
| Aug 6, '86... | Three (3) Bl C.. | T O. M ..... | M. W. Stone, V. P. Gendar |
| " 12, " ... | Ten (10) " ".. | " ..... | M. W. Stone, V. P. Gendar. |
| " 13, " ... | Forty-two (42) ".. | " ..... | M. W. Stone, V. P. Gendar. |
| " 20, " ... | Thirteen (13) ".. | " ..... | M. W. Stone, V. P. Gendar. 164. |
| Oct. 30 ....... | Ten (10) ......... | " ..... | M. W. Stone, V. P. Gendar. |

"M. W. STONE."

These indorsements were made by the bookkeeper, who signed his name underneath the entries in each instance.

No effort appears to have been made to prevent these transactions from coming to the knowledge of all interested. They were openly done, and the record of each of them is, and from the time when they severally occurred has been, contained in and formed a part of the regular books and record of the company. Certainly, plaintiff or the officer representing it would have been justified in reaching the conclusion, after a review of the transactions referred to, that they tended to show, at least, that the assumption of authority by the leading executive officer has been assented to and ratified by the company.

Inquiry of the agent in charge of the defendant's warehouse would have disclosed the fact that cotton had been stored there from time to time by Stone; that he was accustomed to report it regularly as it came in, and did not try to conceal from anybody the fact that Stone had cotton stored there. But one other officer of the company was regularly in attendance, and he was the secretary of the company, Mr. Hascy. Of such an officer, generally, the Court of Appeals recently said in *Hastings* v. *B. L. Ins. Co.* (138 N. Y. 473–479): "The secretary is one of the general managing agents of a corporation, and when in the discharge of the duties of his office he represents the corporation itself." The representations made by him in the course of the business of the company are binding upon it, and how could there be a stronger representation of authority on the part of Stone to sign receipts evidencing the contract between himself and the corporation, of which he is the executive officer, than is furnished by the fact that the certificates to which we have already referred as executed by Stone to himself and the corresponding stubs are in the handwriting of Hascy, the general secretary?

Had defendant, with these facts in its possession, reached the conclusion that the president's representations as to his authority were true and then made the discount, its right to have a jury pass upon the question whether the evidence upon which it relied was not sufficient to amount to assent by the corporation to the president's assumption of authority in making such certificates, could not well be denied.

As has already been observed, if the facts tending to show an assent on the part of the officers of the corporation to the acts of its president in signing certificates in behalf of the corporation representing that it had stored for him cotton, are of such a character as would have entitled the plaintiff to a submission of the question to a jury, and he on inquiry ascertained such facts, they are equally available to it for that purpose when it did not inquire, or rather when the inquiry which it did make was of one who was then acting for himself and could not bind the company in what he said.

It is a wholesome rule which charges those who are invited to deal with the officers of corporations, in respect to securities or other obligations of the corporation, for the personal benefit of such officers, with the necessity of inquiring as to the authority of the officer to make the contract which he proposes.

But it should not be carried to such an extent as will, under all circumstances, shift the misfortunes almost inevitably resulting from lax administration on the part of the officers and directors of a corporation from its shoulders to that of the individual or corporation having dealings with one of its officers. The dividing line between the two extremes will in the end be located more nearly central, and, therefore, with greater fairness, if where the facts tend strongly to show an acquiescence in the wrongdoing officer's assertion of a right to thus act for it, a jury be permitted to pass upon the question of authority.

This question is presented by the request of the plaintiff, at the close of defendant's testimony, to go to the jury, its denial and the exception taken.

The judgment should be reversed and a new trial granted, with costs to the appellant to abide the event.

VAN BRUNT, P. J., concurred.

FOLLETT, J. (dissenting):

It is not asserted in behalf of the plaintiff that the defendant authorized its president to issue the warehouse receipt by which it agreed to deliver, on demand, 172 bales of cotton which it had not received. The receipt was a fraud, and as between Stone, to whom it was issued, and the defendant, it was void. The burden was on

the plaintiff to show that it did not stand in the shoes of Stone, and before a recovery can be had the plaintiff must show (1) that it is a holder in good faith, and (2) that the defendant is estopped from denying its liability by some act or omission of its directors or managing officers relied on by the plaintiff when it acquired the receipt.

It is a general rule that a principal is not bound by a contract executed by an agent in favor of himself. (Story Ag. §§ 10, 11, 210, 211; *Neuendorff* v. *World Mutual Ins. Co.*, 69 N. Y. 389; *Voltz* v. *Blackmar*, 64 id. 646; *Pratt* v. *D. H. M. F. Ins. Co.*, 130 id. 206; *Bank of New York* v. *Am. Dock & Trust Co.*, 70 Hun, 152; Morse on Banks & Banking, § 499.)

It appeared on the face of this receipt that the president of the defendant assumed to bind his corporation for his own benefit, and the plaintiff's cashier testified that he knew when he took the certificate that H. W. Stone, president, and H. W. Stone, to whom the receipt was given, were the same person. So the plaintiff had knowledge that it was a contract which Stone had no right to make, and it took the receipt at its peril. (*Claflin* v. *Farmers & Citizens' Bank*, 25 N. Y. 293; *Dabney* v. *Stevens*, 2 Sweeny, 415; affd., 46 N. Y. 681; *West St. L. Sav. Bk.* v. *Shawnee, etc., Bk.*, 95 U. S. 557; Mor. Corp. §§ 517–606.)

The case is barren of evidence tending to show that the plaintiff received this warehouse receipt on the faith of any act done or omitted by the directors or the managing officers of the defendant. Facts which existed and had not come to plaintiff's knowledge and were not relied on by it, form no basis for an estoppel *in pais*. A person is not estopped by conduct unless his conduct was known to and relied on by the person asserting the estoppel. The plaintiff cannot rely upon the acts of Stone, nor upon his statement made in connection with this transaction, for he was then acting in his individual capacity, for his own benefit, and not as the president of the defendant. He could not act in both capacities in the same transaction. (*Moores* v. *Citizens' National Bank of Piqua*, 111 U. S. 156; *Manhattan L. Ins. Co.* v. *F. S. S. & G. S. F. R. R. Co.*, 139 N. Y. 146.)

I think the plaintiff took this certificate with notice of its infirmity, and that the defendant is not estopped from denying that

it was issued without authority. Stone was the vice-president of the defendant from 1876 to 1890, and president from the latter date until March 27, 1891, when he died. In 1881, Stone, as vice-president, issued to himself two receipts for cotton, and in 1886, three receipts for cotton, all of which were regularly entered on defendant's books. It is not shown that the issuance of these receipts was authorized, nor that the fact that they had been issued ever came to the knowledge of the board of directors or of any officer except the secretary. It is asserted that from this evidence the jury might have found that Stone was authorized to issue receipts to himself for cotton actually delivered.

I think the fact that five receipts were issued by Stone in his own behalf in fifteen years, during which time many thousand receipts were issued, is insufficient evidence to warrant a jury in finding that the defendant had authorized Stone to issue receipts to himself. It seems to me that *The Bank of New York* v. *Am. Dock & Trust Company* (70 Hun, 152) is decisive of this case, and that the judgment should be affirmed, with costs.

Judgment reversed and new trial granted, with costs to the appellant to abide event.