The Corn Exchange Bank of the City of New York, Respondent, *v.* American Dock and Trust Company, Appellant.

*Warehouse receipts — when the corporation issuing them is estopped thereby — erroneous charge, how cured.*

A bank with which a storage warehouse receipt had been pledged, as collateral to a loan made to the president of the warehouse company, in whose name the receipt had been issued, brought an action against the warehouse company to recover the value of certain cotton alleged in such warehouse receipt to have been stored with the defendant.

*Held,* that the right of recovery by the bank did not rest upon the actual possession of the cotton by the defendant or its assertion of possession, but upon its contract, and that the defendant could only be estopped from denying the contract by conduct upon the part of its officers, or some one of them, amounting to an assurance that the alleged receipt was that of the corporation. (Per Parker, J.)

The action in such case is upon the contract, and the defendant's liability depends upon its validity, which rests not upon the question whether there was cotton in the defendant's warehouse belonging to the person to whom such warehouse receipt was issued, but whether the making of the receipt was authorized. (Per Parker, J.)

If, after making an erroneous charge to a jury, the judge, at the request of one of the parties, instructs the jury correctly as to the objectionable part of his charge, the original error therein is cured, and the judgment will not be reversed by reason thereof.

Appeal by the defendant, American Dock and Trust Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 3d day of March, 1893, upon the verdict of a jury rendered after a trial at the New York Circuit, and also from an order entered in said clerk's office on the 9th day of March, 1893, denying the defendant's motion for a new trial made upon the minutes.

*Thaddeus D. Kenneson,* for the appellant.

*John M. Bowers,* for the respondent.

Parker, J.:

On the 9th day of February, 1891, Medad W. Stone, the president of the American Dock and Trust Company, made his certain

note to the Corn Exchange Bank for the sum of $5,000, and deposited with said bank as security for the money advanced him on such note two papers purporting to be warehouse receipts, issued by the defendant in this action.

One of such receipts was dated December 23, 1890, and was in these words:

" M. W. STONE, *Prest.*,                    A. J. POUCH, *Vice Prest.*,
" F. H. POUCH, *Treas.*                     A. C. HASCY, *Secy.*

"AMERICAN DOCK & TRUST COMPANY.

" Number of certificate                 Office, Cotton Exchange,
   24,820.                              Rooms 50 & 51, New York.

"NEW YORK, *Dec.* 22, 1890.

" Received on storage at 'The American Docks,' for account of M. W. Stone.

" One hundred and twenty-two bales of cotton.

" 50 x R. V. 50 U. M. W., 22 W. I. L.

" Subject to the order of themselves, on payment of the charges accrued thereon and surrender of this receipt.

" Weight or grade not guaranteed.

" Labor 10c.

" Storage per month, 10c.

" Bales 122.

" Store 5.                              M. W. STONE, *Prest.*"

(Indorsed on left-hand margin): " This receipt is valid only when signed by either the president or treasurer."

(Indorsed on back):

(Indorsements for delivery.)

" The property mentioned below is hereby released from this receipt for delivery from warehouse:

"Date.          Merchandise.        Marks.          Signature.

                                         " M. W. STONE."

The other receipt was in the same form, but dated December 23, 1891.

These warehouse receipts were in the usual form of warehouse

receipts issued by the defendant, except that the president, who signed the receipt, was also named as the person for whose account the goods were said to have been stored.

After the maturity of the note the plaintiff demanded the cotton which the receipts purported to describe. But as Stone had not deposited the cotton in the warehouse the demand was refused. Hence this action.

Plaintiff's officers knew at the time of discounting the note that the person named in the receipt as the one on whose account the bales of cotton therein described had been stored, was the same person who, as president, had signed the receipt, and also knew that he was making use of it for his own personal benefit.

The facts so far presented are precisely like those in *Bank of N. Y. National Banking Association* v. this defendant (70 Hun, 152), and *Hanover National Bank* v. this defendant (75 id. 55), in which it was held that the facts were such as to put the plaintiff upon inquiry touching the authority of the president to issue the receipts.

In the latter case it was held that where a situation is presented which the law declares should put a person of ordinary prudence upon inquiry, he is chargeable with constructive notice of everything to which that inquiry would reasonably have led him, and nothing more; that failure to inquire would not work the defeat of the party chargeable with inquiry, should he prove upon the trial the existence of such facts at the time inquiry should have been made as would have protected him had he inquired before accepting the paper. And it was held that the facts of that case, tending to show assent on the part of the officers of the corporation to the acts of its president, in signing certificates in behalf of the corporation, representing that it had stored for him cotton, were of such a character as entitled the plaintiff to a submission of the question to the jury whether the defendant had assented to the president's assumption of authority in making such certificates.

In this action the plaintiff, in attempting to meet the burden resting upon it, proved the same facts which led this court to decide that there was a question for the jury in the *Hanover National Bank* case. It also proved that it did make some inquiry, not before it had discounted the paper, it is true, but in time to have saved it

from loss, had the result of its investigation led it to doubt the authority of the president of the defendant to sign the receipts.

Plaintiff's loan clerk testified that William Mead, an employee of the Corn Exchange Bank, and whose principal employment in the bank was to make an examination of all merchandise offered as collateral to loans, was directed by him to make an examination, and to assist him in the matter, he gave him a memorandum containing the warehouse marks, the name of the man who borrowed on the cotton, the number of bales, and the marks on the bales. Mead testified that he had been connected with the bank for a number of years, and had been in the habit of visiting this warehouse on similar errands, and that the person with whom he had always transacted the business was a Mr. Jewell, the bookkeeper in charge of the office, who also had charge of the receipt and storage of cotton; that the paper which he received from Mr. Nichols contained a statement of the number of bales, the marks on the bales, the name of the person who stored it, and the number of bales stored.

"That paper," said the witness, "I handed to Mr. Jewell and said to him, "I come to learn something about that cotton ; to see that cotton," and he said, "That cotton is here, but it is inspected now and has an inspection number on it." After the interview had ended, Mead returned to the bank and announced that the cotton was in the warehouse and inspected. Jewell, defendant's employee, speaking of the same interview, said, "I stated to Mr. Mead that we had cotton of those marks and that they had been inspected, and I gave him the inspection numbers into which those marks had been changed. I did not tell him who owned that cotton. He did not ask me who owned that cotton. He did not say anything about a certificate having been issued to Mr. Stone."

A careful examination of the testimony shows that there was no direct conflict in their evidence, although the witnesses must have intended that different inferences should be drawn. Jewell, defendant's employee, asserts with great positiveness that Mead did not tell him who owned the cotton, not that he did not know who owned it. But Mead did not testify that he told him that Stone owned the cotton, but instead he said, "I handed Jewell the paper containing, among other things, the name of Stone, the president, on whose account the cotton was stored. Thereupon Jewell said

that cotton is here." It is clear that the jury would have been authorized to infer from the testimony that Jewell did know that the object of the inquiry was to ascertain whether Stone had in storage the cotton described in the receipt, and with such knowledge informed plaintiff's employee that the cotton was there.

Under the evidence, therefore, the plaintiff was entitled to go to the jury on the question, whether defendant had assented to its president's assumption of authority to make certificates acknowledging storage of cotton on his account. While the court rightfully denied the motion to dismiss the complaint, because there was presented a question for the jury, which we have pointed out, it did not submit any such question to them.

Instead, the jury were instructed that "The plaintiff can only recover in this action if you shall find from the evidence in the case that Mr. Jewell told Mr. Mead that Mr. Stone had 194 bales of cotton there. And it recovers then because the defendant will be estopped from denying the truth of the statement." This proposition does not seem to be entirely accurate. If Mead had inquired of Jewell whether Stone had 194 bales of cotton in storage, and received a reply in the affirmative, when the statement was not true, that would not of itself have estopped the defendant from denying the execution of the contract upon which the possession of the cotton was sought to be acquired.

The right to maintain the action does not depend in any measure upon the possession by the defendant of the cotton described. Were it so, then the assertion of the possession of cotton when there was none, would quite likely be held to have estopped defendant from denying it as against one led into an investment on the faith of the assertion of possession. But that is not this case. Plaintiff's right of recovery is not founded upon the actual possession of the cotton by the defendant, or its assertion of possession, but rather upon what is alleged to be its agreement; and the defendant can only be estopped from denying the agreement by conduct on the part of its officers, or some one of them, broad enough to amount to an assurance that the alleged certificate or receipt was that of the corporation. The action is upon the contract. Defendant's liability depends upon its validity. That rests, not on the question of whether there was cotton in defendant's

warehouse belonging to Stone, but whether its making was authorized. If there never was any such cotton in defendant's possession there will be a recovery if the agreement be valid. If there was and still is cotton there belonging to Stone, there can still be no recovery unless the agreement be valid or defendant estopped from denying it. To say casually, or in response to inquiry, that Stone had cotton on storage would amount to an assertion of an immaterial fact. It would not have placed the plaintiff in any worse position certainly than if it had been true. If true there could be no recovery unless defendant can be properly charged with making the certificate. If plaintiff's assertion of what took place between Mead and Jewell were undisputed, it is possible that it might be deemed broad enough to create an estoppel, because Mead's description of the paper which he says he handed to Jewell informed him that plaintiff was trying to ascertain whether it should take a certificate made by the defendant, declaring that its president, who signed it, had on storage 194 bales of cotton. And when, after examining the paper, if it be true, as Mead asserts, Jewell said, we have that cotton, his answer might be held to imply more than that he had 194 bales of cotton belonging to Stone, for it would have amounted in effect to an assertion by the only person in authority present that the certificate was all right.

But Mead's testimony was in some measure disputed. While, according to Jewell's testimony, he did not deny that Mead was inquiring about a certificate which acknowledged that Stone had cotton in storage, he did say that nothing was said about Stone, and the inference was permissible from his testimony, considered as a whole, that he was without knowledge of the existence of the certificate which was the subject of Mead's inquiry. If the views expressed be correct it would seem to follow that the most favorable charge on the question of estoppel to which plaintiff was entitled was, that if the jury should find that Jewell knew that Mead was attempting to ascertain whether the certificate was all right, and described cotton in storage to the account of Stone, and that his answer was intended to be in the affirmative, then the defendant could not be heard to deny the validity of the certificate. The instruction given was, therefore, too broad and defendant's exception thereto was well taken.

The judgment should be reversed and new trial ordered, with costs to the appellant to abide the event.

O'BRIEN, J. :

I concur with Mr. Justice PARKER and for the reasons given by him, that under the evidence the plaintiff was entitled to go to the jury on the question " whether defendant had assented to its president's assumption of authority to make certificates acknowledging storage of cotton on his account." If this question was fairly presented, the verdict of the jury should not be disturbed, and the question is whether it was so presented or not.

I also agree with Mr. Justice PARKER in his view that it was not a correct statement of the law to charge that " the plaintiff can only recover in this action if you shall find from the evidence in the case that Mr. Jewell told Mr. Mead that Mr. Stone had 194 bales of cotton there. And it recovers then because the defendant will be estopped from denying the truth of the statement." The error into which the court fell in thus stating the law in its main charge seems to have been entirely cured when, after his attention was called to the statement and at the request of the defendant, the judge correctly stated the law to be " that the defendant cannot be estopped from denying the genuineness of the alleged warehouse receipts, unless they find that Mr. Jewell represented to Mr. Mead that the defendant had, at the time of the inquiry, the cotton mentioned in the alleged warehouse receipts, and that that cotton belonged to Stone, and that such representation was made with knowledge that the bank was making the inquiry for the purpose of acting or relying upon it." I think that by this instruction, which was full and clear, the prior inaccurate statement in the charge was cured.

It is true that, in a subsequent discussion between counsel for the defendant and the court, some obscurity may have resulted from the colloquy between them, but if so, counsel has only himself to blame, because, after the original charge containing the inaccuracy was finished, and he had called the attention of the court specifically to it by a request which was full and accurate, he should have been content to allow that branch of the case to rest in that condition. He saw fit, however, to except to the very portion of the charge which was thus cured by his own request, and is respon-

sible, therefore, for the confusion which may have been thus created. I do not think he is entitled to be rewarded by having the judgment on this ground alone reversed.

I think, therefore, that the judgment should be affirmed, with costs.

VAN BRUNT, P. J., concurred.

Judgment affirmed, with costs.