Rutgers Female College of the City of New York, Appellant, *v.* Cornelius H. Tallman, as Executor, etc., of Jacob B. Tallman, Deceased, Respondent.

*Possession of real estate by another than the record owner — sufficient to put a purchaser upon inquiry — when such notice will not extend to the consideration of foreclosed mortgages.*

The fact that a person other than the record owner of real estate is in the possession thereof is sufficient to put a proposed purchaser of the same upon inquiry touching the rights therein of the person in the possession thereof.

When a situation is presented which the law declares should put a person of ordinary prudence on inquiry, he is chargeable with constructive notice of everything to which that inquiry would reasonably have led, but with notice of nothing more.

In the absence of information tending to arouse suspicion, the proposed purchaser of real estate is not bound to investigate in relation to the consideration of mortgages covering such premises which have been foreclosed.

Appeal by the plaintiff, Rutgers Female College of the City of New York, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of New York on the 1st day of April, 1893, upon the decision of the

court, rendered after a trial at the New York Special Term, dismissing the plaintiff's complaint upon the merits.

The original defendant, Jacob B. Tallman, died in July, 1892, and by an order of September 26, 1892, the action was revived and continued against his executor.

*Albert Stickney* and *Wm. L. Snyder*, for the appellant.

*James M. Smith*, for the respondent.

PARKER, J.:

For a little over two years prior to June 1, 1872, James P. Pierce, of the State of California, had the record title to certain premises known as Nos. 487, 489 and 491 Fifth avenue — premises which for a number of years had been occupied by this plaintiff for college purposes. On that date Pierce conveyed the property to this defendant's testator for a consideration of $120,000. At the time of the conveyance defendant's testator was a trustee of the plaintiff, to which position he was elected June 20, 1871.

Immediately after the defendant's testator had acquired title to the premises he leased them to the plaintiff from year to year until 1879, when plaintiff was dispossessed, but by verbal agreement, subsequently entered into, plaintiff occupied the premises as tenant of defendant's testator until sometime in April, 1882. The last meeting of the board of trustees was held at said premises on the 18th of April, 1882. About two months prior to the last-mentioned date, defendant's testator conveyed the property to August Pottier for the sum of $180,000, and in July following the plaintiff, at the request of Pottier's attorneys, and for a nominal consideration, also executed and delivered to said Pottier a quit-claim deed of the premises. Not until 1890, nearly eight years after the conveyance of the property to Pottier, was any claim presented to, or demand made of the defendant's testator, in respect to such property, or the proceeds of it, when this suit was commenced, in which the plaintiff prayed that defendant's testator account to it for all the moneys received by him from Pottier, after deducting any money that may have been advanced by him for the benefit of the plaintiff.

The trial at Special Term resulted in a judgment as to which the plaintiff contends that the trial court misapprehended the nature of

its contention, and treated the case as an ordinary action of fraud brought against a party standing in an ordinary position, thus ignoring what plaintiff characterizes as the fundamental feature of the entire case, to wit, that the defendant's testator was a trustee.

As we understand plaintiff's position it is, that prior to the conveyance from Pierce to the defendant's testator, the plaintiff was entitled in equity to redeem the property on paying to Pierce the amount actually due to him, and that Tallman, having been elected a trustee prior to his taking the deed from Pierce, was chargeable with knowledge of all the facts which by reasonable diligence he could have acquired from an investigation and examination of the college records, and further, that such facts were actually brought to his attention as should have put him on inquiry.

For many years prior to May 31, 1870, the title to the property was in the plaintiff. It was incumbered by four mortgages upon which the principal sums due amounted to $53,000 on June 29, 1868, at which time the plaintiff executed and delivered to James P. Pierce another bond and mortgage for the sum of $52,000 payable, with interest, on the 1st of July, 1871. This latter mortgage the plaintiff contends was without consideration, and that the execution of it was procured by Henry M. Pierce, the then president of the college, and a brother of James P. Pierce, the mortgagee, in pursuance of a fraudulent scheme, having for its purpose the acquisition of the title to the property for very much less than its actual value. The court refused to find as a fact that the mortgage was without consideration, or as a conclusion of law that the mortgage was as between Pierce and the plaintiff fraudulent and avoidable.

If these findings were well founded, it necessarily follows that the judgment of the Special Term was right. But if it be assumed, for the purposes of further discussion, that as between plaintiff and Pierce, the mortgagee, the mortgage was voidable, we are unable to discover a basis upon which a recovery in favor of the plaintiff could have been predicated.

The court refused to find, as requested by the plaintiff, that the "Defendant was expressly notified that there was an irregularity or illegality in the execution and delivery of said mortgage of $52,000." Its refusal is justified by the record.

The question of actual notice is, therefore, out of the case, and

whether defendant's testator had constructive notice remains only for consideration.

Defendant's testator was elected a trustee June 20, 1871, and thereafter was informed that Homer, Morgan & Co., real estate brokers, were offering the property for sale in behalf of Pierce. Ascertaining the price at which the property could be purchased, he caused his attorney to search the title.  We have not the result of that search before us, but the fact is, that the records contained nothing indicating that the $52,000 mortgage was voidable, or that the plaintiff had any equity whatever in the property.

They disclosed that on the 23d day of October, 1869, a judgment of foreclosure and sale of the fourth mortgage was regularly entered at a Special Term of the Supreme Court.  Thereafter a sale was duly had thereunder, resulting in the purchase of the property by James P. Pierce for the sum of $117,000.  Out of the purchase money the referee paid the amounts due for principal and interest on the four mortgages which were prior to the $52,000 mortgage, and deposited the sum remaining in his hands, viz., $57,270.48, with the chamberlain of the city of New York, as by the decree he was directed.  In surplus money proceedings subsequently had, and in which plaintiff appeared by attorney, an order was made that said surplus moneys be paid to James P. Pierce in satisfaction of the principal and interest due on said $52,000 mortgage.  No appeal was taken from that order, and payment was subsequently made by the chamberlain in pursuance of it.

As the plaintiff was a party to the suit, and appeared in the surplus money proceedings, there was certainly nothing in the record to suggest that the plaintiff had any equity in the property.

It is urged that the fact that plaintiff was in possession of the property was sufficient to put defendant's testator on inquiry touching plaintiff's rights therein.  (*Seymour* v. *McKinstry,* 106 N. Y. 230.)

True, but when a situation is presented which the law declares should put a person of ordinary prudence on inquiry, he is chargeable with constructive notice of everything to which that inquiry would reasonably have led, but nothing more.  (*Hanover Nat. Bank* v. *Am. Dock Co.,* 75 Hun, 55.)

Such inquiry would have disclosed that at the time when he was elected a trustee, plaintiff's possession was that of a tenant of

James P. Pierce. A little later, and on July 14, 1871, at a meeting of the board of trustees of the plaintiff, it was recommended that plaintiff secure the college premises owned by·Pierce for another year, and subsequently the premises were rented by plaintiff from Pierce from August 1, 1871, to June 1, 1872, at a rental of $800 per month.

These facts appeared upon the minute book of the plaintiff and were sufficient to satisfy the inquiry which the law put upon defendant's testator by reason of plaintiff's possession. The position of defendant's testator was quite different than it would have been had the suit to foreclose the mortgage been commenced and the subsequent proceedings had while he was a member of the board of trustees. He did not become a member until after the title to the property, through judicial proceedings, had become vested in one who was a stranger to him, and who had never been officially connected with the plaintiff — one whose title the plaintiff recognized by renting the property from him at a stipulated rent, the lease being in pursuance of resolutions passed by the board of trustees. In the presence of such facts and in the absence of other information tending to arouse suspicion, he was not bound to investigate in relation to the consideration of the several mortgages, which were the subject either of foreclosure, or of disposition in the surplus money proceedings.

Judgment should be affirmed, with costs.

VAN BRUNT, P. J., and FOLLETT, J., concurred.

Judgment affirmed, with costs.